**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **THE CROSSROADS GROUP, LLC**<br>4816 Brecksville Road<br>Richfield, Ohio 44286 | **Case No.  23-cv-184** |
| | **Judge Calabrese** |
| **ANDREW STRIGLE**<br>980 Chinaberry Circle<br>Macedonia, Ohio 44056 | **FIRST AMENDED VERIFIED COMPLAINT for DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF and** |
| **SOLE HOUSES LLC**<br>4816 Brecksville Road<br>Richfield, Ohio 44286 | **Exhibit 1:**  *Pertinent Ordinances and Regulations* |
| **Plaintiffs,** | **Exhibit 2:**  *"Violation Notice" and Correspondence regarding Violation Notice* |
| **-vs-** | **Exhibit 3:**  *Verifying Affidavit of Plaintiff* |
| **CITY OF CLEVELAND HEIGHTS, OHIO**<br>40 Severance Circle<br>Cleveland Heights, Ohio 44118 | **Exhibit 4:**  *Pertinent Ordinances* |
| | **Exhibit 5:**  *Secondary Municipal Code Sections* |
| **PAMELA ROESSNER**<br>40 Severance Circle<br>Cleveland Heights, Ohio 44118 | |
| **GAJANE ZAHARJAN**<br>40 Severance Circle<br>Cleveland Heights, Ohio 44118 | |
| **Defendants.** | |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Now comes Plaintiffs, THE CROSSROADS GROUP, LLC, ANDREW STRIGLE, and SOLE HOUSES LLC who, in support of their Complaint for Declaratory Judgment and Injunctive relief states as follows:

## INTRODUCTION

1.    This is an action for declaratory judgment, preliminary and permanent injunction, restitution, and damages arising from Defendants' unconstitutional, discriminatory, and extortionate imposition of special assessments solely upon Cleveland Heights homeowners residing beyond the boundaries of Cuyahoga County.

2.    Plaintiffs now faces an imminent risk of criminal prosecution and extensive daily fines merely because they refuse to pay an arbitrary, discriminatory, and extortionate annual assessment of $100 per home.

3.    Due to Defendants' conduct, Plaintiffs face irreparable harm to their rights under the Fifth and Fourteenth Amendment to the United States Constitution and Sections 1, 2, 16, 19, and 20 of Article I of the Ohio Constitution.

4.    This harm may only be remedied by a ruling from this Court, and Defendant must be immediately and permanently enjoined from enforcing its Outsiders Penalty.

5.    Plaintiffs hereby incorporate Doc. 1-2, Doc. 1-3, and Doc. 1-4, attached to their original Complaint, into this Complaint, without attaching them hereto or contemporaneously re-filing them.

## PARTIES

6.    Plaintiff The Crossroads Group, LLC ("Crossroads Group") is a limited liability company organized in the State of Ohio and has a principal place of business at 4816 Brecksville Road, Richfield, Ohio 44286.

7.    Crossroads Group is, and was during all events in this Complaint, the sole member of Sole Houses, LLC, which in turn owns the properties identified in this Complaint.

8.    Plaintiff Andrew Strigle is a member of Crossroads Group, which owns Sole Houses LLC.

9.     Plaintiff Sole Houses LLC owns the following homes in the City of Cleveland Heights upon which it has paid the Outsiders Penalty:  2196 N. Taylor Road, 2158 and 2199 Westminster Road (the latter is a duplex), 12912 and 13375 Cedar Road, 827 and 961 Caledonia Avenue, 3922 Delmore Road, 936 Whitby

Road, 951 Nobleshire Road, 2196 North Taylor Road, 2435 Grandview Avenue (a duplex), 3336 Cedarbrook Road, 3361 Kildare Road, 3216 Hyde Park Avenue, 3341 and 3358 Altamont Avenue, 1614 and 2353 South Taylor Road.

10.     Defendant City of Cleveland Heights is a municipal corporation in Cuyahoga County organized under the Constitution and laws of the State of Ohio.

11.     The City is a state actor and is a municipal corporation unprotected by sovereign immunity for the purposes of this action.

12.     Defendants Pamela Roessner is an agent and "Assistant Law Director" for the City who interprets, applies, and enforces the City's Municipal Code as requiring owners of leased residential dwellings who live outside of Cuyahoga County to pay a $100 annual assessment solely on the basis of their county of residence.  *Doc. 1-3.*

13.      Defendant Gajane Zaharjan is an agent of the City who interprets, applies, and enforces the City's Municipal Code as requiring owners of leased residential dwellings who live outside of Cuyahoga County to pay a $100 annual assessment solely on the basis of their county of residence.  *Doc. 1-3.*

14.     Defendants Roessner and Zaharjan imposed the foregoing annual assessment against Plaintiffs and others even though no provision within the City's municipal code expressly authorizes the assessment.  See *Doc. 1-2, 1-3, 1-5.*

15.     All actions by the Defendant described herein were undertaken under color of state law and threaten to cause the deprivation of Plaintiffs' rights protected by the United States Constitution and Ohio Constitution.

**FACTS**

16.     To lease a home in the City of Cleveland Heights, the homeowner is required to register and apply for a certificate of occupancy.

3

17.     The fee for obtaining a certificate of occupancy is $200 for the first dwelling unit in a building plus $50 for the second dwelling unit in the building and $25 for each additional dwelling unit in the building.

18.     The City further requires homeowners residing beyond Cuyahoga County to "register their property with the City of Cleveland Heights and to pay an assessment of $100 per dwelling. *Doc. 1-3.*

19.     The City imposes this "Outsiders Penalty" on owners of leased residential homes even though no municipal code section expressly authorizes imposition of this penalty. *Doc. 1-2, Doc. 1-3.*

20.     The Outsiders Penalty is a $100 land use permit imposed solely upon the conduct of leasing when the status/identify of the owner of the property is someone with residency beyond the boundaries of Cuyahoga County, Ohio.

21.     The City maintains, by and through its Assistant Law Director, that any residential dwelling, home or otherwise, leased to another is a "business structure" for the purposes of Section 1369.16. *Doc. 1-3, PageID 34.*

22.     Section 1369.16(a) mandates that "If a business structure . . . located within City is owned by a person or persons, none of whom reside within Cuyahoga County, the owner of the dwelling structure . . . shall register with the Commissioner of Buildings . . ." *Doc. 1-2.*

23.     Section 1369.16(c) maintains that "[t]he registration fee under this Section shall be $100 [annually]." (Hereinafter "The Outsider Penalty"). *Doc. 1-2.*

24.     Cleveland Heights Codified Ordinance 1369.16(a) defines a business structure as, "including without limitation a commercial, industrial or institutional structure, located within the City[.]" *Doc. 1-2.*

25.      The City, by and through Defendants Roessner and Zaharjan, maintain that *residential homes* that are leased to individuals other than the owner are "business structures," for the purpose of imposing Section 1369.16(c) assessments. *Doc. 1-3, PageID 34.*

26.     On June 6, 2022, Defendant Roessner indicated to Plaintiff Gabrail that the City considers residential dwellings like his to be "business structures" subject to the Outsider Penalty, stating as follows:  "I think

4

your confusion lies in the definition of 'business structure' as used in these code sections. Section 1361.06 provides the definition of 'business' as applied in Chapter 13 of the Cleveland Heights Codified Ordinances: 'Business' means all uses or occupancies other than residential.' And then the code defines 'structure' in 1361.16:  'Structure' means anything constructed or erected, the use of which requires a fixed location on the ground or attached to something having a fixed location on the ground and includes, but is not limited to, advertising signs, fences, billboards, backstops for tennis courts and pergolas.'"  See *Doc. 1-3, PageID 34.*

27.    The imposition of the Outsider Penalty on Plaintiffs and other residential homeowners by Defendants Roessner and Zaharjan appears inconsistent with the City's municipal code because the City differentiates between a business structure and a dwelling structure thru the separate codified ordinances addressing the regulation of each.  *Compare Codified Ordinance 1369.16 ("Registration of Business Structures by Out-of-County Owners")* with *Cleveland Heights Codified Ordinance 1351.34 ("Registration of Dwelling Structure by Out-of-County Owners").  Doc. 1-2.*

28.    The City maintains a separate Section governing "Registration of Dwelling Structure[s] by Out-of-County Owners" that would be rendered superfluous by Defendant Roessner and Zaharjan's application of Section 1369.16 to leased residential homes.  *Doc. 1-2, PageID 31.*

29.     The foregoing Section governing "Registration of Dwelling Structure[s] by Out-of-County Owners" once imposed an identical $100 per year Outsiders Penalty on owners of leased residential homes that the City initiated through Ordinance 170-2012 in 2012 and repealed through Ordinance 124-2020 in 2020.  *Doc. 1-5.*

30.     The City maintains, through Defendants Roessner and Zaharjan, that Plaintiffs' leased residential homes are subject to Section 1351.34 ("Registration of Dwelling Structure[s] by Out-of-County Owners"), which contains no $100 annual Outsider Penalty.  *Doc. 1-3, PageID 44-45.*

31.    Through its Assistant Law Director, Pamela Roessner, the City identified the City's two governmental interests in imposing the Outsiders Penalty on owners of leased residential homes as follows:

"The first, which is why they decided to require an out-of-county owner to designate an in-county agent, is to have a local agent available to accept service of process when there are legal filings such a[s] court commons, subpoenas, nuisance abatement actions, or just generally to have a local contact in case of an emergency arising at the property" and "[t]he second reasoning was that there is an increased amount of resources expended by the City on properties owned by out-of-county owners, such as inspections and monitoring, in addition to handling the paperwork for the registration, and hence the fee." *Doc. 1-3, PageID 41.*

32.    Upon request the City was unable to provide records or other evidence substantiating that homes owned by those residing outside of Cuyahoga County impose more costs on the City or receive more governmental benefits from the City. *Id.*

33.    Upon request, the City was unable to provide records or other evidence substantiating how funds derived assessment of the Outsiders Penalty have been or are being used by the City. *Doc. 1-3, PageID 36, 39-40.*

34.    The City insists that the amount of the Outsiders Penalty is codified, stating to Plaintiffs "[t]he City didn't arbitrarily select the amount – the amount is set by ordinance, specifically CHCO Section 1369.16." *Doc. 1-3.*

35.    On January 14, 2022, Plaintiffs submitted to the City a public records request seeking details "as to (a) all payments made to the City for the $100 out-of-county ownership registration, (b) the names and addresses of all such individuals who have made these payments since January 1, 2019, (c) the total amount of these fees collected for calendar years 2019, 2020, and 2021, (d) what bank account or funds these fees were transferred into, and (e) how these fees were applied from an expenditure standpoint." *Doc. 1-3, PageID 39.*

36.     In response to Plaintiffs' public records request, the City indicated that, as of February 18, 2022, amounts collected through assessment of the Outsiders Penalty are as follows:  $133,809 in 2019, $68,700 in 2020, and $177,650 in 2021.  *Doc. 1-3, PageID 35-36.*

37.     In response to an additional January of 2023 public records request from Plaintiffs, the City provided data indicating that it collected approximately $47,600 through assessment of the Outsiders Penalty in 2022.

38.     The City has collected at least $427,759 in Outsiders Penalties from January 1, 2019 through the date of this Complaint.

39.     In response to an additional January of 2023 public records request from Plaintiffs, the City provided data indicating that it continues to impose and collect the Outsiders Penalty in 2023.

40.     In response to Plaintiffs' public records request, The City indicated that it transfers revenue from the Outsider's Penalty to the City's general fund, and that the City does not track how these funds are spent, once transferred into the general fund.  *Doc. 1-3, PageID 36.* (More specifically, the City's position is that "[t]here are no records responsive to your request regarding how those fees are used because they are combined in the general fund" and "[t]he fees are deposited into the general fund of the City of Cleveland Heights.  The ordinance requiring the registration of dwelling structures by out-of-county owners (CHCO Section 1351.34) does not require the City to maintain an itemized list of what the fees are being spent on, and therefore such a list does not exist").

### The City's Application of the Outsiders Penalty to Plaintiffs

41.     On March 11, 2021 the City indicated to Plaintiffs that they are required to pay the Outsiders Penalty on each leased residential home they own in the City of Cleveland Heights.  See *Doc. 1-3, PageID 45.* (Zaharjan stating "[p]er City ordinance ever owner residing outside of Cuyahoga County has to submit out-of-county registration and payment annually per property" and "[e]very owner residing outside of Cuyahoga County is required to submit out-of-county owner registration and payment. And we charge everyone the amount as required").

7

42.     The City indicated to Plaintiffs on January 4, 2022, "I will state again, the City does expect you to comply with the law, by registering your properties, designating an in-county agent, and paying the fee. The penalty for not abiding by Section 1351.34 is a [first-degree] misdemeanor." *Doc. 1-3, PageID 41.*

43.     Under threat of criminal prosecution, Plaintiffs paid the Outsiders Penalty in 2022.

## JURISDICTION AND VENUE

44.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fifth and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and permanent injunctive relief and damages; and under 42 U.S.C. § 1988, to award attorneys fees.

45.     Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.8, as (i) the Defendants are situated within this judicial district and division; and (ii) all of the claims asserted by Plaintiff arose within this judicial district and division.

46.     This Court maintains supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367.

## COUNT I
## DECLARATORY JUDGMENT AND INJUNCTION

47.      Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

48.     In order to prevent violation of Plaintiffs' constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, pursuant to FED. R. CIV. P. 57, declaring unconstitutional the Defendant's policies and practices challenged herein.

49.     Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue a permanent injunction prohibiting the Defendant from enforcing their restrictions on Plaintiffs' Due Process rights and other rights to the extent they are unconstitutional, in order to prevent continued and imminent violation of Plaintiffs' constitutional rights.

50.     It is further appropriate and hereby requested that preliminary and permanent injunctions issue enjoining Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from engaging in any further official conduct that threatens, attempts to threaten, and/or actually interferes with Plaintiffs' exercise of the rights and liberties preserved through the United States and Ohio Constitutions.

51.     Plaintiffs desire an injunction to protect their rights against the City since they are in constant threat of criminal liability with daily penalties mounting and a potential prison term for their failure to pay the Outsiders Penalty.

**COUNT II**
**VIOLATION OF RIGHT TO DUE PROCESS AND EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION and SECTIONS 1, 2, 16, and 19 of ARTICLE I OF THE OHIO CONSTITUTION**
**(42 U.S.C. § 1983)**

52.     Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

53.     The Fourteenth Amendment to the United States Constitution forbids state actors from denying any person equal protection of the laws.

54.     Article I, Section 2 of the Ohio Constitution provides that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit…"

9

55.     A regulation of property violates the Ohio Constitution's guarantees of Due Process and Equal Protection when it is "arbitrary," "unduly oppressive upon individuals," not "necessary for the public welfare," or fails to *substantially* advance a legitimate interest *through a substantial relationship to it*. See *Direct Plumbing Supply v. City of Dayton*, 138 Ohio St. 540 (1941); *City of Cincinnati v. Correll*, 141 Ohio St. 535, 539 (1943).

56.     In *State v. Mole*, the Ohio Supreme Court indicated that the Ohio Constitution's equal protection guarantees can be applied to provide greater protection than their federal counterparts: "Although this court previously recognized that the Equal Protection Clauses of the United States Constitution and the Ohio Constitution are substantively equivalent and that the same review is required, <u>we also have made clear that the Ohio Constitution is a document of independent force</u>." *State v. Mole*, 2016-Ohio-5124, ¶¶ 14, citing *Arnold v. Cleveland,* 67 Ohio St.3d 35, 42 (1993).

57.     "The attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis' . . . classifications must have a reasonable basis and may not 'subject individuals to an arbitrary exercise of power." *State v. Mole*, 2016-Ohio-5124, ¶¶ 12-29; *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, at at 446 (1985)("The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational").

58.      Even under mere rational basis review in *Cleburne,* the Supreme Court rejected as "invalid as-applied" under equal protection a regulation to "require the permit for this facility when other care and multiple-dwelling facilities are freely permitted," reasoning that "the record does not reveal any rational basis for believing that the Featherston home would pose any special threat to the city's legitimate interests." *Id.*, at 447-449.

59.     The Supreme Court has been clear that mere subjectivity will not suffice when denying a land use permit on the basis of one's status: "denying a permit based on vague, undifferentiated fears is again

10

permitting some portion of the community to validate what would otherwise be an equal protection violation." *Id.,* at 447-449.

60.    The United States Supreme Court requires heightened equal protection scrutiny when analyzing discrimination on the basis of residency.

61.    A "classification created by [a] residence requirement, 'unless shown to be necessary to promote a compelling governmental interest, is unconstitutional." *Mem'l Hosp. v. Maricopa Cnty.,* 415 U.S. 250, 250–88, 94 S. Ct. 1076, 1078–97 (1974), citing *Shapiro v. Thompson*, 394 U.S. 618, at 634, 89 S.Ct. 1322, at 1331.

62.    When government discriminates on the basis of residency, it bears a "heavy burden of justification" and must employ "means that do not unnecessarily burden constitutionally protected interests." *Id.*

63.    "A State may not protect the public fisc by drawing an invidious distinction between classes of its citizens." *Id.*

64.    Differential monetary extractions are subject to Equal Protection scrutiny. *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,* 488 U.S. 336, 109 S.Ct. 633 (1989).

65.    In *Allegheny Pittsburgh,* the Supreme Court held that a county failed to comport with equal protection requirements when a "gross disparit[y]" in tax levels could not be justified in a state system that demanded that "taxation ... be equal and uniform." *Id.,* at 338, 109 S.Ct. 633.

66.    The Equal Protection Clause is violated by state action that deprives a citizen of even "rough equality in tax treatment," when state law itself specifically provides that all the affected taxpayers are in the same category for tax purposes. *Allegheny Pittsburgh,* 488 U.S., at 343; see *Hillsborough v. Cromwell,* 326 U.S. 620, 623, 66 S.Ct. 445 (1946)("The equal protection clause ... protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class").

11

67.     The Supreme Court forbids unequal treatment in assessment on the basis of residency alone. *Williams v. Vermont,* 472 U.S. 14, 14–37, 105 S. Ct. 2465 (1985).

68.     In *Metropolitan Life Ins. Co. v. Ward*, the Supreme Court invalidated an enactment that "impose[d] a substantially lower gross premiums tax rate on *domestic* insurance companies than on *out-of-state* (foreign) insurance companies."  470 U.S. 869, 105 S.Ct. 1676 (1985).

69.     In *Ward*, the Supreme Court decried "impermissible classification based solely on residence."  *Id.,* at pp. 1684.

70.     Local government are forbidden from pursuing otherwise-permissible governmental interests through means that are "purely and completely discriminatory" – such a means "constitutes the very sort of parochial discrimination that the Equal Protection Clause was intended to prevent." *Id.*

71.     "The validity of the view that [a local government] may not constitutionally favor its own residents by taxing foreign[ers] at a higher rate solely because of their residence is confirmed by a long line of this Court's cases so holding."  *Ward*, supra.

72.     The plain text of the City's Outsiders Penalty, on its face, distinguishes between homeowners solely on the base of residence.

73.     The Outsiders Penalty discriminates against Plaintiffs and others on the basis of their inherent status rather than their use of city services.

74.     The City's Outsiders Penalty is materially similar to the discriminatory use tax enjoined by the Supreme Court in *Williams v. Vermont* and *Metropolitan Life Ins. Co. v. Ward.*

75.     Those residing beyond the boundaries of Cuyahoga County cannot limit, ameliorate, or reduce the Outsiders Penalty no matter how clean, safe, or pristine the condition of the property they own in Cleveland Heights.  See *Ward*, supra.  ("Domestic insurers remain entitled to the more favorable rate of tax regardless of whether they invest in Alabama assets. Moreover, the investment incentive provision of the Alabama statute does not enable foreign insurance companies to eliminate the discriminatory effect of the statute").

12

76.     Like the Vermont surcharge invalidated in *Williams*, the Outsiders Penalty applies at the time of registering property – in this case, a home rather than an automobile See *Williams,* at 14 ("use tax when cars are registered").

77.     Like the Vermont surcharge invalidated in *Williams*, the Outsiders Penalty is not imposed if the homeowner resides within a favored political subdivision.  See *Williams,* at 14 ("the credit is available, however, only if the registrant was a Vermont resident at the time he paid taxes").

78.     Like the Vermont surcharge, "no legitimate purpose is furthered by the discriminatory exemption here" because just as "residence . . . is a wholly arbitrary basis on which to distinguish amongst present Vermont registrants" and such a residency-based surcharge "bears no relation to the statutory purpose of raising revenue for the maintenance and improvement of roads," residence is a wholly arbitrary basis on which to distinguish amongst Cleveland Heights homeowners for the purpose of raising revenue to remediate code violations.

79.      When pressed, the City maintains no evidence displaying that homeowners dwelling in Summit County (like Plaintiffs) rather than Cuyahoga County inflict greater costs on the City.

80.     The City of Cleveland Heights impermissibly relies upon a homeowner's county of residence as a proxy or surrogate for harm caused to the City by the home, despite the obvious lack of a nexus between the two factors.

81.      A homeowner's county of residence is an impermissibly arbitrary and unequal basis upon which to impose a supplemental assessment on the status of home-ownership or the right to lease one's home to others.

82.     Plaintiffs are subject to the Outsider Penalty even though their distance from Cleveland Heights, in both miles and minutes, is less than the distance in miles or minutes from the majority of western Cuyahoga County residents that are not subject the Outsider Penalty.

13

83.     Homeowners residing in Strongsville, Ohio, which is in Cuyahoga County, are 2.4 miles further from Cleveland Heights than Plaintiffs' location in Richfield, Ohio (Summit County).

84.     One of the Plaintiffs dwells just 21 minutes from Cleveland Heights, and can reach the City within 34 minutes via Interstate 271.

85.     The Outsiders Penalty transgresses the greater Equal Protection guarantees of the *Ohio* Constitution, even if it were permissible under *federal* constitutional scrutiny.[1]

86.      The Outsiders Penalty is impermissibly arbitrary and unequal, both on its face, and as applied here.

87.     The Supreme Court is clear that "administrative considerations could not justify ... an unfair system" in which "a city arbitrarily allocate[s] taxes among a few citizens while forgiving many others . . ." *Armour v. City of Indianapolis*, 566 U.S. 673 (2012).

88.     The Outsiders Penalty violates Plaintiffs' right to equal protection because it arbitrarily discriminates against them solely on the basis of the location of their residency.

**COUNT III**
**UNCONSTITUTIONAL CONDITIONS and TAKINGS PURSUANT TO UNDER THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION and SECTIONS 1, 16, and 19 of ARTICLE I OF THE OHIO CONSTITUTION**
**(42 .S.C. § 1983)**

89.     The federal Constitution protects "property interests."  *Hall v. Meisner,* 51 F.4th 185, 189–90 (6th Cir. 2022).

90.     "The existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Id.*

91.     "State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law."  *Id.*

*Plaintiffs' property interest in owning and leasing their homes*

---

[1]      *PruneYard Shopping Ctr. v. Robbins* (1980), 447 U.S. 74; *State v. Brown* (1992), 63 Ohio St.3d 349 ("The Ohio Constitution may be interpreted without adherence or deference to federal court decision regarding the United States Constitution, which provides a floor, not a ceiling, for individual rights enjoyed by state citizens").

92.     Plaintiffs maintain a protected property interest in leasing homes they own in Cleveland Heights to others because Due Process guarantees protect liberty and property interests such as the right to lease one's home:  the Supreme Court has squarely rejected any notion that "basic and familiar uses of property," are a "government benefit."  *Horne v. Dept. of Agriculture,* 135 S.Ct. 2419, at 2430 (2015)(rather, "the *right* to build on one's own property . . . cannot remotely be described as a 'government benefit'"); see also *Roberge,* infra., at 121 ("The right of the trustee to devote its land to any legitimate use is properly within the protection of the Constitution").

93.     Plaintiffs maintain a protected property interest in leasing homes they own in Cleveland Heights to others because Section 1, Article 1 of the Ohio Constitution provides the following:  "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

94.     Plaintiffs maintain a protected property interest in leasing homes they own in Cleveland Heights to others because Section 19, Article I of the Ohio Constitution states "Private property shall ever be held inviolate, but subservient to the public welfare."

95.     Plaintiffs maintain a protected property interest in leasing homes they own in Cleveland Heights to others because "Ohio has always considered the right of property to be a *fundamental right*  [and] there can be no doubt that the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces."  *Norwood v. Horney* (2006), 110 Ohio St.3d 353, at 361-62 (internal citations omitted).

96.     Plaintiffs maintain a protected property interest in leasing homes they own in Cleveland Heights to others because "venerable rights associated with property" are not confined to the mere ownership of property.  Rather, the Ohio Supreme Court recently acknowledged that "[t]he rights related to property, i.e., to *acquire, use, enjoy,* and dispose of property, are among the most revered in our law and traditions."  *Id.*

97.    Plaintiffs maintain a protected property interest in leasing homes they own in Cleveland Heights to others because "the free use of property is guaranteed by Section 19, Article I of the Ohio Constitution." *Yoder v. City of Bowling Green* (N.D. Ohio, 17-CV-2321), citing *Norwood, supra.*

98.    Plaintiffs maintain a protected property interest in leasing homes they own in Cleveland Heights to others because Ohio homeowners "have a constitutionally protected property interest in running their residential leasing businesses free from unreasonable and arbitrary interference from the government." *Mariemont Apartment Assn. v. Vill. of Mariemont*, 2007-Ohio-173, ¶ 40 ("If the building commissioner fails to issue a rental permit, a landlord must cease renting or seeking to rent a unit and cause it to be vacated . . . We deem the landlords' interest to be significant"); see also *Asher Invs., Inc. v. Cincinnati*, 122 Ohio App. 3d 126, 136, 701 N.E.2d 400, 406 (1997)("the private interest here is plaintiffs' interest in avoiding daily fines of up to $1,000.00 and loss of use of rental property. These interests are substantial").

99.    Plaintiffs maintain a protected property interest in leasing homes they own in Cleveland Heights to others because protection of the right to lease one's home reflects a well-established right arising from home-ownership.

100.    "The ability to lease property is a fundamental privilege of property ownership." *Zaatari v. City of Austin*, 615 S.W.3d 172, at 191 (Tex. App. 2019)("rentals are an 'established practice' and a 'historically ... allowable use'"), citing *Terrace v. Thompson*, 263 U.S. 197, 215 (1923) (noting that "essential attributes of property" include "the right to use, lease and dispose of it for lawful purposes"); *Calcasieu Lumber Co. v. Harris*, 77 Tex. 18, 13 S.W. 453, 454 (1890) ("The ownership of land, when the estate is a fee, carries with it the right to use the land in any manner not hurtful to others; and the right to lease it to others, and therefore derive profit, is an incident of such ownership."); *see also* Ross, Thomas, *Metaphor and Paradox*, 23 Ga. L. Rev. 1053, 1056 (1989) (noting that "rights to sell, lease, give, and possess" property "are the sticks which together constitute" the metaphorical bundle).

16

101.    A recent District Court decision concerning homeowners' rights to lease their homes to others emphasizes that the right to lease homes to others is more highly protected by the Ohio Constitution's guarantees.  *Yoder v. City of Bowling Green*, Ohio, No. 3:17 CV 2321, 2019 WL 415254, at p. 3-6 (N.D. Ohio Feb. 1, 2019).

### Unconstitutional Conditions and Impermissible Takings

102.    Plaintiffs' right to and property interest in leasing their Cleveland Heights homes to others may not be subjected to impermissible conditions or extortion.

103.    Courts must carefully police "the special vulnerability of land use permit applicants to extortionate demands for money."  *Koontz,* supra.

104.    The Supreme Court has explained that the Unconstitutional Conditions Doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."  *Thompson v. City of Oakwood,* 3:16-cv-169 (S.D. Ohio 2018), citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013).

105.    *Nollan* and *Dolan* "involve a special application of [the unconstitutional conditions] doctrine that governs when owners apply for land-use permits . . . When a city conditions receipt of a permit on the payment of a monetary exaction, the burden [is] on the city to justify the required dedication."  *Koontz v. St. Johns River Water Mgmt. Dist.,* 570 U.S. at 604, ("We have said in a variety of contexts that 'the government may not deny a benefit to a person because he exercises a constitutional right")*,* citing *Nollan v. California Coastal Comm'n,* 483 U.S. 825 (1987), and *Dolan v. City of Tigard,* 512 U.S. 374 (1994); see also *Planned     Parenthood,     supra*     ("The unconstitutional-conditions doctrine is     not     limited to First Amendment rights, but rather, applies in a number of contexts").

106.    "Monetary exactions . . . are subject to exacting scrutiny under *Nollan* and *Dolan* and "must satisfy the proportionality requirements of *Nollan* and *Dolan." Koontz*, supra., at 595–636 (relying, in part, on *Home Builders Assn. v. Beavercreek,* 89 Ohio St.3d 121, 128 (2000), for the proposition that "Numerous

courts—including courts in many of our Nation's most populous States—have confronted constitutional challenges to monetary exactions over the last two decades and applied the standard from *Nollan* and *Dolan* or something like it.").[2]

107.     When tied to a land-use permit for a specific parcel, "[courts] treat[] confiscations of money as takings despite their functional similarity to a tax." *Koontz,* supra.

108.     Indeed, a takings analysis applies even "where the government, by confiscating financial obligations, achieved a result that *could* have been obtained by imposing a tax." *Koontz,* supra*.,* at 615.

109.     "The government's demand for property from land-use permit applicants must satisfy the requirements of *Nollan* and *Dolan* . . . even when its demand is for money." *Koontz,* supra*.,* at 619; see also *Am. Furniture Warehouse Co. v. Town of Gilbert*, 245 Ariz. 156, 163 (Ct. App. 2018)("*Koontz* held that, when applicable, *Nollan/Dolan* provides the proper analysis when the government conditions issuance of a permit either upon the payment of a fee or upon the transfer of property"); *Koe-Krompecher v. City of Columbus*, 2005-Ohio-6504, ¶¶ 1-24 (exactions takings analysis applies to government "taking personal property, i.e., money, outright with no authority to do so").

110.     Applying takings analysis in *Dolan,* the Supreme Court relied upon the absence of "any special quantifiable burdens created by [the property use] that would justify the particular [exactions] which are not required from the public at large." *Id.,* at 2316-17.

111.      The *Dolan* Court reached this conclusion because a "city must make some sort of individualized determination that the required [exaction] is related both in nature and extent to the impact of the proposed [use]." *Id.,* at 2320-21 ("the city has not met its burden. . . the city must make some effort to quantify its findings in support of the dedication for the pedestrian/bicycle pathway beyond the conclusory statement that it could offset some of the traffic demand generated"); see also *Nollan,* 483 U.S., at 836–837 (explaining that

---

[2]     These differing takings analyses can be synthesized as follows: (1) outright takings of land, funds, or personal property invokes a traditional takings analysis; (2) regulations of conduct not disturbing a traditional property right invoke only the *Penn Central* regulatory takings analysis; and (3) forbidding a rightful land use unless funds are first paid invokes *Koontz, Nollan, Dolan,* and *Beavercreek* scrutiny, at minimum.

"[t]he evident constitutional propriety" of prohibiting a land use "disappears ... if the condition substituted for the prohibition utterly fails to further the end advanced as the justification for the prohibition"); and *Levin v. City & Cty. of San Francisco,* 71 F. Supp. 3d 1072, 1074 (N.D. Cal. 2014)("The Court holds that the Ordinance effects an unconstitutional taking by conditioning property owners' right to withdraw their property on a monetary exaction not sufficiently related to the impact of the withdrawal.").

112.     In Ohio, a regulation infringing upon private property rights cannot be "arbitrary" or "unduly oppressive." *State ex rel. Pizza v. Rezcallah*, 1998-Ohio-313, 84 Ohio St. 3d 116, 131–32 (emphasis added).

113.     Forcing Plaintiffs and others to pay an additional monetary charge for simply exercising their right to lease homes they own is arbitrary, duplicative, and a taking. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155 (1980)("the seizure of the interest earned was unrelated to any service provided by the Florida court system because a separate statute specified a percentage fee that the court clerk would receive to cover his expenses"); *Engelman v. Budish*, 2015-Ohio-1153, ¶¶ 18-22, 31 N.E.3d 126, 132–33 ("duplication of charges for sewer connection" constituted a "taking"); *Cook Rd. Invests., L.L.C. v. Cuyahoga Cty. Bd. of Commrs*., 2011-Ohio-2151, ¶23 (the taking of money through redundant monetary charges for the same governmental services is "arbitrary and unreasonable" and therefore "an unconstitutional taking of property").

### *The Outsiders Penalty is not a permissible user fee.*

114.     The Outsiders Penalty is not a "user fee":  "user fee" ordinances are in place for proprietary functions such as the immediate and tangible provision of water, gas, parking, sewer services, and insurance.

115.     "[A] municipality may require a license fee for a particular business or activity; however, the amount of such fee must bear a reasonable relation to the burden imposed by the activity being licensed and by the licensing process itself, upon the governmental entity involved." *AE Owner L.L.C. v. City of E. Cleveland*, 2019-Ohio-2220, ¶13 ("the proposed occupancy fee constitutes an illegal tax disguised as a fee"), citing *City of Richmond Heights v. LoConti,* 19 Ohio App. 2d 100, 101–16 (Ohio Ct. App. 1969)( t]he ordinance…is

unconstitutional as a licensing ordinance because it is wholly out of proportion to any burden imposed upon the municipality by the licensed activity, and because it discriminates against one form of activity which bears no greater relation to the evils sought to be prohibited than do other activities which are not licensed").

116. When a municipality provides substantially similar services or benefits to those paying an assessment as it does to those who do not, the assessment is not a permissible user fee. *White*, supra., at ¶40 ("[R]esidents or non-residents are not receiving a service for the payment of the registration fee. The City does not respond any differently to a call from an alarm system than it does to a call made directly to the fire or police department. Therefore, * * * the City's alarm registration fee is based solely on status instead of the use of any city service").

117. As assessment exceeds constitutional limits when placed in a city's "general fund," rather than used solely to fund a specified purpose, when it is not "imposed by a government in return for a service it provides," and when it does not involve "a specific charge in return for service." *White v. Cincinnati,* 2021-Ohio-4003, ¶¶ 43-45, 181 N.E.3d 583, 592–93, citing *Drees Co. v. Hamilton Twp.*, 132 Ohio St.3d 186, 2012-Ohio-2370, at Paragraphs 16-20.

118. Those who pay the City's $100 annual Outsiders Penalty already fund the City through payment of property and income taxes.

119. The Outsiders Penalty is not a "user fee": a key element in every "user fee" statute or ordinance that renders these assessments "user fees" is the written entitlement or right to services in response to payment of the assessment and/or the written enforceable duty to provide such services in response to payment of such an assessment. *Id.*

120. No text of any municipal ordinance identifies any enforceable rights, entitlements, or duties that arise in response to Plaintiffs' payment of the Outsiders Penalty.

121. The Outsider Penalty cannot be considered a "user fee" because it is not a permissible exchange of services for payment.

### *The Outsiders Penalty is an Unconstitutional Condition and a Taking*

122.    Plaintiffs are required to move to and remain within Cuyahoga County to avoid owing the Outsiders Penalty to the City.

123.    The City's Outsiders Penalty threatens and attempts to coerce Plaintiffs into surrendering their property interest in leasing their homes by taking personal property from them when they do so.

124.    There is no "essential nexus" between any governmental interest maintained by the City and the City's imposition of the Outsiders Penalty.

125.    There is no "rough proportionality" between the "impact" of Plaintiffs' leases and the amount of the Outsiders Penalty.

126.    The City has failed to make "the sort of *individualized* determination that the required dedication [imposed by the Outsiders Penalty] is related both in the nature and extent to the impact" of Plaintiffs' ownership and/or leasing of homes in Cleveland Heights while residing in Summit County, Ohio.  See *F.P. Dev., LLC v. Charter Twp. of Canton, Michigan,* 16 F.4th 198, 205–08 (6th Cir. 2021); see also *Goss v. City of Little Rock*, 151 F.3d 861, 863 (8th Cir. 1998) (holding that local traffic mitigation requirements did not satisfy *Dolan*'s rough-proportionality test because they were based on pre-set assumptions, rather than an individualized impact assessment).

127.    The City has failed to make the requisite "effort to quantify its findings in support" of the imposition of the Outsiders Penalty.  *Id.*

128.    Pursuant to the Outsiders Penalty, Plaintiffs' leasing of Cleveland Heights homes while residing in Summit County "triggers the mitigation requirement [of the Outsiders Penalty] regardless of the specific impact cause" by Plaintiffs' use. *Id.*

129.    The Outsiders Penalty takes private property (in the form of money) from homeowners residing outside of Cuyahoga County for public use, without compensating the homeowners forced to pay it.

130.    Through impeding the right to lease one's home solely on the basis of residence, the City's enforcement of the Outsiders Penalty imposes an unconstitutional condition on Plaintiffs and other Cleveland Heights homeowners.

131.    The Outsiders Penalty imposes an unconstitutional condition on Plaintiffs' exercise of their rights to own and/or lease homes in Cleveland Heights while residing outside of Cuyahoga County.

132.    The Outsiders Penalty is not calibrated to account for actual costs Plaintiffs' leasing or residential status inflict on the City.

133.    The Outsiders Penalty is not calibrated to account for actual benefits, if any, putatively provided by the City.

134.    The Outsiders Penalty is not calibrated to account for taxes Plaintiffs already pay to the City of Cleveland Heights.

135.    Funds generated by the Outsiders Penalty are placed into the general fund, and their use is unrestricted.

136.    The City's own public records display that all revenue from the Outsiders' Penalty are placed into the City's "General Funds Account," rather than in an account established for legitimate expenses incurred by the City in remediating problems with rental homes owned by those residing outside of Cuyahoga County.

137.    Defendants Roessner and Zaharjan have violated and threaten to continue to violate Plaintiffs' Due Process rights by unilaterally imposing the Outsiders Penalty on Plaintiffs and others even though City Council has not enacted and maintained an enabling ordinance authorizing the imposition of the Penalty.

138.    Defendants Roessner and Zaharjan have violated and threaten to continue to violate Plaintiffs' Due Process rights by arbitrarily expanding the scope of City of Cleveland Heights municipal ordinances so as to create the Outsiders Penalty through administrative *fiat*.

<u>COUNT IV</u>
**UNJUST ENRICHMENT AND RESTITUTION**

139.    Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

140.    Defendant City of Cleveland Heights has acquired and/or is in possession of funds, acquired through enforcement of its unlawful Outsiders Penalty, that it is not entitled to retain.  See, generally, *Thompson v. City of Oakwood,* No. 3:16-CV-168, 2018 WL 776375 (S.D. Ohio 2018).

141.    A suit seeking the return of specific funds wrongfully collected or held by a state actor may be maintained in equity.  *Santos v. Ohio Bur. of Workers' Comp.,* 101 Ohio St.3d 74, syllabus.  *Accord Judy v. Ohio Bur. of Motor Veh.,* 100 Ohio St.3d 122; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.,* 62 Ohio St.3d 97 (1991).

142.    Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

143.    Ohio law does not require that the benefitted party act improperly in some fashion before an unjust enrichment claim can be upheld; instead, unjust enrichment can result "from a failure to make restitution where it is equitable to do so. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain" without paying compensation. (Citations omitted.) *Advantage Renovations, Inc. v. Maui Sands Resort, Co., L.L.C.,* 2012-Ohio-1866, ¶ 33.

144.    Through its unconstitutional assessments, Defendant City of Cleveland Heights has acquired funds rightfully belonging to Plaintiffs.

145.    Through promulgation and enforcement of the Outsiders Penalty, Defendants unconstitutionally extracted in excess of $3,000 from the named Plaintiffs.

146.    It would be unconscionable for the City of Cleveland Heights to retain and/or abstain from returning the Outsiders Penalty assessments acquired from Plaintiffs and others.

23

147.    Claims for the refund of such assessments associated are equitable in nature, meaning that the law of restitution requires that such fees be returned to those who have paid them.

148.     Plaintiffs are entitled to a refund of all unlawfully-coerced Outsiders Penalty assessments they paid to Defendants.

### *Class Claims for Injunctive Relief and Restitution*

149.    In total, Defendants have enforced the Outsiders Penalty to extract annual payments of $100 on approximately 1,377 Cleveland Heights homes, and nearly 1,377 homeowners.

150.    Plaintiffs are adequate class representatives who are similarly situated to others that have paid the Outsiders Penalty, for the purposes of Fed. R. Civ. P. 23.

151.    A class of City of Cleveland Heights homeowners to have paid the Outsiders Penalty to the City from January 1, 2019 through the present is identifiable, if not already identified by the City's records.

152.    The City has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

153.    Questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

154.    The Class specified herein is entitled to restitution.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and that this Court:

(1)      Declare that City of Cleveland Heights "Outsiders Penalty," whether codified in the City's municipal code or not, is unconstitutional on its face, unconstitutional as applied by Defendants, and/or unconstitutional as applied to Plaintiffs.

(2)      Issue a preliminary and permanent injunction prohibiting Defendants from enforcing the Outsiders Penalty against Plaintiffs;

(3)      Issue a preliminary and permanent injunction prohibiting Defendants from enforcing or relying on the Outsiders Penalty so as to prosecute, fine, imprison, or otherwise punish Plaintiffs and others.

(4)      If deemed necessary or helpful to resolve the case, certify novel issues of state constitutional law articulated in this Complaint to the Ohio Supreme Court for clarification;

(5)      Pursuant to Fed. R. Civ. P. 23, certify a class of all City of Cleveland Heights homeowners to have paid the Outsiders Penalty to the City from January 1, 2019 through the present.

(6)      Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiffs their costs, damages, and expenses incurred in bringing this action, including their reasonable attorneys' fees and restitution for assessments paid;

    *and*

(7)      Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

*/s/ Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
122 E. Main Street
Columbus, Ohio 43215
Tel: (614) 340-9817
*MThompson@OhioConstitution.org*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following attorneys within the offices of the City of Cleveland Heights, via e-mail, on the date of filing:

Pamela Roessner, *Esq.*- City of Cleveland Heights Assistant Law Director
*PRoessner@Clvhts.com*

Harrison Crumrine, *Esq.*- City of Cleveland Heights Assistant Law Director
*HCrumrine@CLvhts.com*

Respectfully submitted,

/s/ *Maurice A. Thompson*
Maurice A. Thompson (0078548)