## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

THE CROSSROADS GROUP, LLC,           )      Case No. 1:23-cv-00184
*et al.*,                            )
                                     )      Judge J. Philip Calabrese
     Plaintiffs,                    )
                                     )      Magistrate Judge
v.                                   )      Jennifer Dowdell Armstrong
                                     )
CITY OF CLEVELAND HEIGHTS,           )
*et al.*,                            )
                                     )
     Defendants.                    )
                                     )

## OPINION AND ORDER

The City of Cleveland Heights requires homeowners that lease their property to register and apply for a certificate of occupancy.  If the homeowner resides outside Cuyahoga County, the owner must also pay a $100.00 fee.  Plaintiffs The Crossroads Group, LLC, Andrew Strigle, and Sole Houses LLC allege that this additional fee imposed only on owners of property in Cleveland Heights who reside outside Cuyahoga County (1) violates their rights to due process and equal protection and (2) constitutes an unconstitutional condition and taking.  In bringing these claims, Plaintiffs seek to represent a class of over 1,000 homeowners.  (ECF No. 13.)  For the reasons that follow, the Court **GRANTS IN PART** Plaintiffs' motion for class certification.

## STATEMENT OF FACTS

Property in Cleveland Heights is subject to municipal housing and business maintenance codes.  (ECF No. 15-1; ECF No. 15-2.)  Section 1347.02 of the Housing

Code requires homeowners that rent or lease their property to hold a certificate of occupancy issued by the Building Commissioner.  *See* Cleveland Hts. Codified Ordinances § 1347.02 (2022); ECF No. 15-1, PageID #225.  A certificate of occupancy ranges in annual cost between $200.00 to $1,225.00 depending on the number of units in the building.  Cleveland Hts. Codified Ordinances § 1347.06 (2022); ECF No. 15-1, PageID #228.  Additionally, homeowners that are not residents of Cuyahoga County but rent their property must also pay an annual $100.00 fee.  (*See, e.g.*, ECF No. 1-3, PageID #46.)   From January 2019 to February 2022, the City collected over $400,000.00 in these fees from over 1,300 owners who reside outside Cuyahoga County.  (ECF No. 13-1, PageID #159; *see also* ECF No. 5, ¶¶ 36–38, PageID #61; ECF No. 16, ¶ 36, PageID #296–97; ECF No. 13-2; ECF No. 24-3.)

The record before the Court establishes the following facts relevant to Plaintiffs' motion for class certification.  Plaintiff Sole Houses LLC, based outside Cuyahoga County in Richfield, Ohio, owns at least a dozen properties in Cleveland Heights (ECF No. 13-2, PageID #183–84; ECF No. 23-1, PageID #411) and paid the $100 fee at issue for several properties (*see, e.g.*, ECF No. 24-3, PageID #486–87).  In registering some of them, Sole Houses failed to list an authorized agent with a physical address in Cuyahoga County.  (ECF No. 23-3, ¶ 4, PageID #445.)   The Cleveland Heights Building Code requires owners of residential rental properties who do not reside in Cuyahoga County to designate a natural person who does to receive notices of violations.  Cleveland Hts. Codified Ordinances § 1351.34(a); ECF No. 15-1, PageID #248.

2

Plaintiff The Crossroads Group, LLC is the sole member and owner of Sole Houses. (ECF No. 23-1, PageID #400 & #402.)  In turn, Plaintiff Andrew Strigle owns 10% of The Crossroads Group.  (*Id.*, PageID #402–03.)  Tapa Properties LLC holds title to six of the properties at issue.  (ECF No. 23-3, ¶ 3, PageID #444; ECF No. 25-1, ¶ 2, PageID #588.)  The Crossroads Group is the sole member of Tapa Properties (ECF No. 25-1, ¶ 3, PageID #588), but does not hold title to any real property in Cleveland Heights (ECF No. 23-1, PageID #410–11 & #414–16).  Mr. Strigle does not directly own any of the properties at issue either.  (ECF No. 23-1, PageID #410–11.)

## STATEMENT OF THE CASE

On January 31, 2023, Plaintiffs filed suit challenging the City's imposition of an additional $100 fee on owners of rental properties who reside outside of Cuyahoga County.  (ECF No. 1.)  In their amended complaint, Plaintiffs allege that the fee (1) violates their rights to due process and equal protection; (2) constitutes an unconstitutional condition and taking; and (3) unjustly enriches the City.  (ECF No. 5, ¶¶ 52–154, PageID #63–78.)  In doing so, Plaintiffs rely on the United States and Ohio Constitutions and State law.  (*Id.*)  As relief, Plaintiffs request a declaratory judgment, injunctive relief, and restitution.  (*Id.*, ¶¶ 47–51 & 139–48, PageID #62–63 & #77–78.)

Shortly after filing their complaint, Plaintiffs moved for a preliminary injunction.  (ECF No. 6.)  During briefing on that motion, Plaintiffs also moved for class certification (ECF No. 12; ECF No. 13), and Defendants moved to dismiss and, alternatively, for the judgment on the pleadings (ECF No. 15).  Following conferences

3

to discuss how to proceed, and in what order, in resolving these competing motions, the Court notified the parties that will treat the dispositive motions as cross-motions for summary judgment, which it will decide after disposing of the motion for class certification.  (ECF No. 22, PageID #361–63.)  Accordingly, the parties conducted discovery and otherwise prepared the record for class certification.

Plaintiffs bring their claims on behalf of a class of similarly situated homeowners who do not reside in Cuyahoga County spanning a time period from January 1, 2019 to present.  (ECF No. 5, ¶¶ 149–54, PageID #78 & #79.)  Specifically, Plaintiffs allege that Defendants received annual payments from approximately 1,377 non-residents.  (*Id.*, ¶ 149, PageID #78.)  In their motion for class certification, Plaintiffs request that the Court certify a class of persons who "paid one or more $100 annual assessments to the City of Cleveland Heights" after January 1, 2019 "in response to the City's surcharge on those who lease dwellings while residing beyond the boundaries of Cuyahoga County."  (ECF No. 13, PageID #141.)  Plaintiffs' motion attaches a 29-page spreadsheet which they refer to as a "preliminary schedule of class members."  (ECF No. 13-2.)  Also, the record contains a spreadsheet that lists homeowners residing outside the county who paid the $100 fee after July 19, 2019.  (ECF No. 24-3; *see also* ECF No. 24-2, PageID #468.)  Defendants oppose class certification.  (ECF No. 23.)

## STANDING

"Article III does not give federal courts the power to order relief to any uninjured person, class action or not."  *TransUnion LLC v. Ramirez*, 594 U.S. 413,

4

431 (2021).  Therefore, "[a] litigant must be a member of a class which he or she seeks to represent at the time the class action is certified."  *Sosna v. Iowa* 419 U.S. 393, 403 (1975).

Defendants argue that the Court should deny certification because The Crossroads Group and Mr. Strigle lack standing under Article III.  (ECF No. 23, PageID #381–82.)  The record shows that neither directly owns property in Cleveland Heights or paid the $100.00 fee imposed on homeowners who are non-residents of Cuyahoga County.  (*See* ECF No. 13-2; ECF No. 24-3.)  Accordingly, these two Plaintiffs are not members of the class Plaintiffs seek to certify, which Plaintiffs define by reference to payment of the non-resident fee.

But Defendants do not argue that Sole Houses lacks standing or is not a member of the class so defined.  Even though the record shows that Tapa Properties holds title to approximately six of Plaintiffs' properties in Cleveland Heights (ECF No. 23-3, ¶ 3, PageID #444; ECF No. 25-1, ¶ 2, PageID #588), Sole Houses owns the others, and Defendants do not contend otherwise (*see* ECF No. 23, PageID #381–82).  Moreover, according to the City's records, Sole Houses paid the fee at issue.  (ECF No. 24-3, PageID #486–87.)  For example, Sole Houses holds title to the house at 827 Caledonia Avenue—not Tapa Properties (ECF No. 23-3, ¶ 2, PageID #444; ECF No. 13-2, PageID #183)—and paid the $100 fee for that property because it is not a resident of Cuyahoga County (ECF No. 24-3, PageID #486 (cross-referencing the same license or permit number for the parcel); *see also* ECF No. 30-4, PageID #703).  Accordingly, the City's records leave no doubt that Sole Houses is a member of the

5

class it seeks to certify and has standing to prosecute the claims at issue, unlike The Crossroads Group and Mr. Strigle.

## ANALYSIS

Due process protects an individual's right "to have his own day in court" and affords litigants the right to participate in and control lawsuits affecting their interests. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846–47 (1999) (citations omitted); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428–29 (1982). A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). Because it binds absent class members to judgments in actions in which they did not participate, and about which they might not even be aware, representative litigation violates due process unless the person seeking to proceed on behalf of a class demonstrates compliance with all the requirements of Rule 23. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *Hansberry v. Lee*, 311 U.S. 32, 42 (1940).

Formerly, a court was foreclosed from inquiry into the merits of the case at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). However, "[r]ecent Supreme Court precedent clearly holds that 'plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 527–28 (6th Cir. 2015) (Cook, J., dissenting) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014)). Under this more recent

authority, a court may certify a class only where the plaintiff presents "evidentiary proof" sufficient to withstand "rigorous analysis" under Rule 23. *Comcast*, 569 U.S. at 33. Rule 23's "rigorous analysis" more often than not "will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51.

To obtain class certification, Sole Houses must prove that it satisfies the procedural requirements in Rule 23(a) and at least one requirement in Rule 23(b). *Comcast*, 569 U.S. at 33.

## I.      Rule 23(a)

Rule 23(a) requires numerosity, commonality, typicality, and adequacy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Additionally, the Sixth Circuit has adopted an implicit ascertainability requirement. *See Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (citing, among other authorities, *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)). Although Defendants challenge the ability of Sole Houses to meet all the prerequisites for class certification, usually not a sign of a winning argument, they focus on the ascertainability of the class based on its definition. Accordingly, the Court begins its rigorous analysis there.

### I.A.    Ascertainability

Ascertainability requires that a class definition be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537–38 (citation omitted). "[C]ourts must be vigilant to ensure that a certified class is properly constituted." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th

Cir. 2007).  "Plaintiffs seeking certification are obligated to propose an identifiable, unambiguous class in which they are members." *Anderson v. United Fin. Sys. Corp.*, 281 F.R.D. 292, 295 (N.D. Ohio 2012) (quotation omitted).

A class definition must provide objective criteria for the court and class members to determine membership in the class without the need for individualized fact finding.  *Young*, 693 F.3d at 538–39*; Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986).  "If a court must make a determination of the merits of individual claims to decide if a particular individual is a member of the class, then the class definition is inadequate." *Carter v. PJS of Parma, Inc.*, No. 1:15-cv-1545, 2016 WL 3387597, at *2 (N.D. Ohio June 20, 2016) (citation omitted).

"[I]mportant elements of defining a class include:  (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner." *Bentley v. Honeywell Int'l., Inc.,* 223 F.R.D. 471, 477 (S.D. Ohio 2004) (citing *Crosby,* 796 F.2d at 580); *see also Givens v. Van Devere, Inc.*, No. 5:11-cv-666, 2012 WL 4092738, at *5 (N.D. Ohio Sept. 17, 2012).

Sole Houses seeks certification of a class of homeowners in the City of Cleveland Heights who rent out homes in the City and live outside Cuyahoga County such that the City imposed its additional $100 out-of-county owner registration fee. Specifically, Sole Houses requests certification of a class defined as:

> All individuals and businesses who, subsequent to January 1, 2019, have paid one or more $100 annual assessments to the City of Cleveland Heights in response to the City's surcharge on those who lease dwellings while residing beyond the boundaries of Cuyahoga County.

(ECF No. 13, PageID #141.)  Defendants contend that this definition is vague and ambiguous and extends the class period beyond the applicable limitations period. (ECF No. 23, PageID #378–81.)  The Court considers each argument in turn.

### I.A.1. Vague and Ambiguous

Defendants argue that use of the terms "assessment" and "surcharge" in the class definition create confusion and defeat a showing of ascertainability because those terms do not appear in the City's Building Maintenance Code.  (*Id.*, PageID #378–79.)  They base this argument on, among other things, the definition of an "assessment" under Ohio law.  (ECF No. 27, PageID #596.)  But this argument misses the mark for two reasons.

First, notwithstanding any claimed or actual vagueness and ambiguity in the terms used to define the class, the record shows that Defendants had little difficulty identifying homeowners who paid the out-of-county owner registration fee at issue. For example, Defendants produced spreadsheets identifying who paid those amounts (ECF No. 13-2; ECF No. 24-3) and provided testimony at deposition about the class definition and those who fall within it, despite some disagreements about the proper terminology (ECF No. 24-1, PageID #458).

Second, the City relies on a problem of its own making.  The monetary exaction at issue, whatever it is called, is *not* named in the City's ordinances, at least not explicitly.  Therefore, some imprecision in terminology is to be expected. Additionally, in their pleadings and motion papers, Plaintiffs' counsel—like all good lawyers—attempt to define the playing field using terms like "assessment" and

"surcharge," an effort the Court takes more as a rhetorical exercise than a precisely technical or legal one. At times, perhaps, Plaintiffs take that practice too far. In any event, this problem—to the extent it is one—is easily solved.

To avoid any confusion, the Court exercises its "broad discretion to modify class definitions." *Powers*, 501 F.3d at 619. In corresponding about the amounts at issue, the City refers to them as "fees" (ECF No. 1-3, PageID #43), and in discovery and at oral argument as "out-of-county owner registration fees" (ECF No. 24-1, PageID #459). Therefore, the class definition will do the same. As modified, the class definition identifies a particular group (owners of residential rental property in Cleveland Heights who reside outside Cuyahoga County) that was allegedly harmed (by paying an additional $100 registration fee) during a particular time frame (within the applicable limitations period before the filing of the complaint). Further, it facilitates ascertaining membership in the class using objective means. Therefore, the class definition as modified is sufficiently definite for certification. Because this revised language simply reflects the same language the City has used, modifying the class definition in this case does not present a circumstance where the Court intervenes to relieve Plaintiffs of their burden on a motion to certify a class.

This clarification in the class definition leaves one other objection from the City. Defendants maintain that the difficulty in identifying the proper owner of Plaintiffs' properties in Cleveland Heights makes ascertaining membership in any class depend on individualized inquiries that defeat certification. After all, The Crossroads Group paid the fees at issue (ECF No. 30-3), even though it does not

10

actually own residential property in the City, and title remains variously with Tapa Properties or Sole Houses. But the record provides an objective and easily administrable identification of class members—out-of-county owners of residential property in Cleveland Heights who paid the $100 fee at issue. (*See* ECF No. 24-3.) Further, it demonstrates that the City has the ability with marginal effort to refine this list according to the Court's modifications to the class definition. Even if others actually paid the fee at issue, the City accepted that payment on behalf of the property owner it identifies in its records, making this class definition reflect the real-world substance of administration and collection of the fee. Accordingly, the record provides an ascertainable class definition appropriate for certification.

### I.A.2. Applicable Limitations Period

In their amended complaint, Plaintiffs bring constitutional claims that seek monetary and injunctive relief and a claim for unjust enrichment. The parties dispute the applicable limitations period for these claims and remedies, which will define the outer boundaries for any class period. Sole Houses argues for a six-year limitations period based on various decisions from the Northern and Southern Districts of Ohio. (ECF No. 25, PageID #578–81.) In arguing for a two-year limitations period, Defendants rely on Sixth Circuit precedent. (ECF No. 23, PageID #379–81.)

In *Janosek v. City of Cleveland*, 718 F.3d 579, 581–82 (6th Cir. 2013), the plaintiff sued an Ohio political subdivision for overcharges in his water bills, alleging violations of procedural due process, a taking under the Ohio Constitution, negligence, and unjust enrichment. Under Ohio law, the Sixth Circuit recognized

11

that, "an action against a political subdivision must be brought 'within two years after the cause of action accrues.'" *Id.* at 581 (quoting Ohio Rev. Code § 2744.04).  Indeed, the State statute on which the *Janosek* Court relied applies broadly to "[a]n action against a political subdivision to recover damages for . . . loss . . . to property allegedly caused by any act or omission in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.04(A).  Additionally, a two-year-limitations period generally applies to claims under Section 1983, *see Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989), including due process and takings claims, *see Banks v. City of Whitehall*, 344 F.3d 550, 553–54 (6th Cir. 2003); *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997).  Generally, a cause of action accrues when the wrongful act is committed.  *Janosek*, 718 F.3d at 581 (citing *Flagstar Bank, F.S.B. v. Airline Union's Mortg. Co.*, 128 Ohio St. 3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 27).

Plaintiffs offer no response to the Sixth Circuit's decision in *Janosek*, which specifically applied a two-year limitations period to a claim for unjust enrichment and did so in a case treating allegedly wrongful overcharges as a "loss to property" within the meaning of Section 2744.04(A).  In fairness, the plaintiff's claims in *Janosek* accrued some eight years before filing suit, easily making the claim untimely without much further analysis.  Instead, Plaintiffs cite numerous federal decisions.  (ECF No. 25, PageID #579–81.)  Only one applies a six-year limitations period for unjust enrichment claims under Ohio law.  In *Thompson v. City of Oakwood, Ohio*, 307 F. Supp. 3d 761, 768–69 (S.D. Ohio 2018), the plaintiff brought a class action against a

12

political subdivision alleging, among other claims, unjust enrichment due to a municipal fee for point-of-sale inspections for property transfers.   Based on Section 2305.07 of the Ohio Revised Code, the district court applied a six-year limitations period to that claim.  *Id.* at 784.  It did so without mentioning the Sixth Circuit's decision in *Janosek*.  Plaintiffs also rely on *Baker v. City of Portsmouth*, No. 1:14-cv-512, 2015 WL 5822659, at *8 (S.D. Ohio Oct. 2015).  But that case does not address the limitations period or *Janosek*.  None of the other cases on which Plaintiffs rely address the limitations period.

In 2021, the Ohio General Assembly amended Section 2305.07.  At the time of *Thompson*, the statute provided that "an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."  Ohio Rev. Code § 2305.07 (2018).  In the amended version of the statute, claims for unjust enrichment based on a contract theory are subject to a four-year statute of limitations period:  "[A]n an action upon a contract not in writing, express or implied, shall be brought within four years after the cause of action accrued."  Ohio Rev. Code § 2305.07(A).  For a six-year limitations period to apply, a claim must either be "[a]n action upon a liability created by statute other than a forfeiture or penalty" or arise out of a consumer transaction.  Ohio Rev. Code § 2305.07(B) & (C).

For a claim to qualify as "an action upon a liability created by statute," it must be a statutory cause of action that was not "available at common law."  *McAuliffe v. Western States Import Co.*, 72 Ohio St. 3d 534, 538, 1995-Ohio-201, 651 N.E.2d 957,

960 (discussing language that remains unchanged in the amended version of the statute). But Plaintiffs' claim for unjust enrichment ultimately traces to the common law. And it does not arise here from a consumer transaction. Therefore, at most, the four-year statute of limitations for "an action upon a contract not in writing, express or implied" applies. Ohio Rev. Code § 2305.07(A). But the facts underlying Plaintiffs' claims do not support a quasi-contractual theory of recovery. Instead, Plaintiffs allege a violation off their civil rights, best characterized as a species of tort law. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007).

When faced with conflicting statutes of limitations, "courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298, 1302 (1984). Based on the actual nature of Plaintiffs' claims and their substance, Plaintiffs seek to recover money that they contend the City unlawfully charged them and those similarly situated. In this respect, their civil-rights claims most closely resemble torts, making the appropriate statute of limitations two years. *See Browning*, 869 F.2d at 992; *see also Triplett v. Benton*, 2003-Ohio-5583, 2003 WL 22390065, at ¶ 6 (Ohio Ct. App.) (citation omitted) (applying a one-year statute of limitations instead of the six-year statute of limitations supplied by Section 2305.07 because the "gist of the complaint" suggested that the plaintiff asserted malpractice claims and not quasi-contractual claims).

Accordingly, the Court will also modify the class period to reflect the applicable limitations period. Because the question arose at oral argument, the Court notes

14

that, in its view, certification to the Ohio Supreme Court to determine the applicable limitations period is not appropriate for two reasons.  First, Section 2744.04. is sufficiently clear on its face that the question does not justify the time and expense attending certification, even it meets the standard in Rule 9.01(A) of the Rules of Practice of the Supreme Court of Ohio, which the Court doubts.  Second, in any event, the limitations period for an action under Section 1983 presents a question of federal law, *see Wilson v. Garcia*, 471 U.S. 261, 268–70 (1985), albeit one determined by reference to State law.

### I.B.   Numerosity

Numerosity requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Defendants make the conclusory argument that "Plaintiffs have failed to satisfy their heavy burden to show that the numerosity requirement has been met[.]"  (ECF No. 23, PageID #382.)  But the record belies this claim.  (ECF No. 24-3, PageID #472–504 & #505–39 (in part).)  The City's records show payments from sufficiently numerous persons who paid the out-of-county owner registration fee during the applicable limitations period that their joinder in this action is impracticable.  *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006); *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-cv-00983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (noting that a class of 40 or more is generally sufficiently numerous).

### I.C.   Commonality

Commonality requires the class to share common questions of law or fact.  Fed. R. Civ. P. 23(a)(2).  To assess commonality, courts consider whether there is a common

15

contention that, if resolved, would address all claims "in one stroke." *Dukes*, 564 U.S. at 350.  Defendants tie their commonality argument to the class definition.  (ECF No. 23, PageID #382.)  As already explained, those issues do not prevent a finding of ascertainability.  Each class member's claim turns primarily on a common issue: whether the City's collection of a $100 fee from persons who own residential rental property in Cleveland Heights but do not reside within Cuyahoga County violates the Constitution or otherwise unjustly enriches the City.  Because the answer to that question will likely drive resolution, the class satisfies Rule 23's commonality requirement.

### I.D.  Typicality

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A named plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citing *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  Defendants direct their typicality arguments to The Crossroads Group and Mr. Strigle.  (ECF No. 23, PageID #383.)  Because they are not members of the class they seek to represent, the Court need not address their typicality further.  As for Sole Houses, its conduct gives rise to the same sort of claims that Plaintiffs bring and are typical of the legal theories that apply broadly to those similarly situated.  Accordingly, its claims are typical of the class.

16

### I.E.  Adequacy

Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit articulates two criteria for determining adequacy:  "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representative[] will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. General Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976) (citations omitted).  Also, the Sixth Circuit recognizes that, "[t]o judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff."  *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 431 (6th Cir. 2012) (citation omitted).

Based on its honesty and trustworthiness, Defendants attack the adequacy of Sole Houses as a class representative.  (ECF No. 23, PageID #383–84; ECF No. 27, PageID #600–03.)   Primarily, Defendants base this argument on alleged noncompliance with Ohio law stemming from a failure to record the transfer of six properties from Tapa Properties to Sole Houses and continuing to list Tapa Properties as the owner in out-of-county owner registration applications.  (ECF No. 23, PageID #383–84; ECF No. 23-3, ¶¶ 2 & 3, PageID #444.)  Even taking this argument as establishing the inadequacy of Sole Houses with respect to these properties, a conclusion about which the Court harbors doubts, the company still owns some six or twelve additional properties for which it paid the fee at issue.  (ECF No. 5, ¶ 9, PageID #56–57; ECF No. 24-3, PageID #486–87.)   These issues fail to establish that Defendants have unique defenses as against Sole Houses—because it owns other

properties that do not appear to be subject to these arguments, which likely apply to other class members given the nature of the market and fee at issue. Even if these facts gave rise to unique defenses, the record provides no indication that Sole Houses would not adequately protect the interests it has in common with members of the class.

Defendants also argue that the record shows Sole Houses is a zombie entity because it has no employees and is totally controlled by The Crossroads Group, making it an alter ego for the real party in interest. (ECF No. 27, PageID #601.) But the authority on which Defendants rely for this proposition makes it inapplicable here. In *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976), the court recognized that certification is not appropriate where a class representative "a mere *alter ego* for one too embarrassed or otherwise constrained from suing in his own right." There, the facts demonstrated that the class representative sued on behalf of an aggrieved customer of an unrelated stockbroker who did not want to get directly involved in litigation over a tender offer. In contrast, The Crossroads Group is not a similarly unrelated party. Nor does the record show that it or Mr. Strigle has been fundamentally dishonest about the business dealings or corporate relationships that matter for purposes of this case. Indeed, the record shows that Plaintiffs paid the fees at issue.

But this is not a case where an alter ego theory, even if true, gives rise to a conflict that would compromise the adequacy of Sole Houses as the representative of the class. Under Defendants' argument, The Crossroads Group or Mr. Strigle would

be the real party in interest, and each joined this suit as a Plaintiff. Indeed, Defendants simultaneously challenge their standing and membership in the class they seek to represent. But Defendants cannot eat their cake (standing or membership in the class) and have it (adequacy) too. Either The Crossroads Group and/or Mr. Strigle are the real parties in interest and, therefore, have standing to represent the class of which they are members and Sole Houses is inadequate to do so or the opposite holds.

Having accepted Defendants argument that the class defines its members by reference to payment of the fee at issue, as a formal matter, the Court finds that Sole Houses is an adequate representative which will vigorously prosecute its claims on behalf of a class. Further, "[o]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class representative inadequate." *Gooch*, 672 F.3d at 431 (quoting *Pasternak v. Colonial Equities Corp./U.S.A.*, No. H-90-829 (JAC), 1993 U.S. Dist. LEXIS 10884, 1993 WL 306526, at *5 (D. Conn. Feb. 10, 1993)). Indeed, prior admissions to the facts establishing insurance fraud do not by themselves create a credibility problem that will defeat a showing of adequacy. *Gooch*, 672 F.3d at 431. Any issues or concerns to which Defendants point fall far short of this high standard. The Court will address the adequacy of class counsel in connection with Rule 23(g) below.

## II.    Rule 23(b)

In addition to the prerequisites under Rule 23(a), class certification requires that Plaintiffs also establish at least one requirement in Rule 23(b). *Comcast*, 569

U.S. at 33. Plaintiffs contend that they meet all three subsections of the Rule. The Court addresses each in turn, but out of order.

### II.A. Injunctive and Declaratory Relief (Rule 23(b)(2))

In addition to monetary damages, Plaintiffs seek declaratory relief and an injunction (ECF No. 5, PageID #78–79) and monetary damages (*id.*, ¶ 148, PageID #78). Plaintiffs move for certification of a class under Rule 23(b)(2). Under this Rule, a plaintiff may maintain a class action if the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification of this sort of class action depends on "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Put another way, Rule 23(b)(2) only permits certification where a single injunction or declaratory judgment will apply to every class member. *Id.* This is so because of the indivisible nature of the declaratory relief at issue, which will apply to all class members or none of them. *Id.*

Two features of Rule 23(b)(2) make certification of a class under this Rule improper here. First, according to the Supreme Court, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360–61. "[I]ndividualized monetary claims belong in Rule 23(b)(3)." *Id.* at 362. Second, the

Supreme Court held that Rule 23(b)(2) does not permit class certification where "the monetary relief is not incidental to the injunctive or declaratory relief." *Id.* at 360.

To be sure, "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases where certification under Rule 23(b)(2) is proper. *Amchem Prods.*, 521 U.S. at 614.  In fact, challenges to racial segregation, in which a single class-wide injunction provided a remedy, motivated enactment of the Rule.  *Dukes*, 564 U.S. at 361.  But that history confirms that certification under Rule 23(b)(2) is not appropriate where, as here, class members combine an individualized request for damages with class-wide injunctive or declaratory relief.  *Id.* (discussing advisory committee note to 1966 amendment).  In this case, however, Plaintiffs seek monetary relief that is not incidental to the injunction or declaratory judgment they also seek and is individualized in that each class member paid the same fee for differing numbers of properties in differing numbers of years.  Therefore, the due process concerns the Supreme Court identified in *Dukes* foreclose class certification under Rule 23(b)(2).

### II.B.  Incompatible Standards (Rule 23(b)(1))

Class certification is appropriate under Rule 23(b)(1) in circumstances in which individual actions would (1) establish incompatible standards of conduct, Fed. R. Civ. P. 23(b)(1)(A), or (2) dispose of the interests of those not parties as a practical matter, Fed. R. Civ. P. 23(b)(1)(B), such as where a limited fund is involved.  Under the law of this Circuit, the same considerations that limit certification of a class seeking monetary relief under Rule 23(b)(2) and *Dukes* apply under Rule 23(b)(1).  *Clemons*

21

*v. Norton Healthcare Inc.*, 890 F.3d 254, 281 (6th Cir. 2018) (citing William B. Rubenstein, Newberg on Class Actions § 4:13 (5th ed. 2017)).

Although certification of a class seeking damages might be appropriate under Rule 23(b)(1)(A), *id.*, this case does not risk varying adjudications that might result in incompatible standards of conduct for the City. In individual actions, some class members might prevail while others might not, but such a result does not make certification under Rule 23(b)(1) appropriate. *Pipefitters Loc. 636 Ins. Fund v. Blude Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011). That law or public policy might obligate the City to treat all owners of residential rental property who reside outside of Cuyahoga County the same, making inconsistent judgments impermissible for such a reason does not make certification of a mandatory class under Rule 23(b)(1) appropriate.

To support certification of a class under Rule 23(b)(1), Plaintiff relies on cases involving shareholder disputes, public nuisances, landowners, and those seeking to invalidate a bond issue. (ECF No. 13, PageID #150–51.) Those sorts of cases present situations more conductive to certification under Rule 23(b)(1). In each, adjudication effectively disposes of a specific asset or resource or determines available rights or remedies in a way that forecloses a contrary determination. Such is not the case here. Indeed, some class members might for their own reasons or no reason at all decide that they are not interested this litigation or recovery of monetary damages. Accordingly, certification in this case does not satisfy the demands of due process for litigation of Plaintiffs' claims on a mandatory aggregate basis.

### II.C.   Money Damages (Rule 23(b)(3))

To certify a class, Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In making these findings, the following matters are pertinent:  (A) the interests of class members in individually controlling the litigation; (B) the extent and nature of any litigation concerning the dispute class members have already initiated; (C) the desirability of concentrating litigation of the claims in the particular forum; and (D) the likely difficulties in managing the class action.  Fed. R. Civ. P. 23(b)(3).

### II.C.1. Predominance

Predominance "tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623.  "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof."  *Young*, 693 F.3d at 544 (quotation omitted).  Plaintiffs in class actions must demonstrate that they can prove through common evidence that a defendant's actions injured all class members.  *In re Rail Freight Fuel Surcharge Antitrust Litig.—MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013) (citing *Amchem Prods.*, 521 U.S. at 623–24).  Moreover, that common evidence must establish that the class members suffered the same injury.  *Id.*  In other words, to find predominance, common questions must not only exist, but they must also

represent a significant aspect of the case capable of resolving the questions for all class members in a single adjudication.

In establishing predominance, "[a] plaintiff class need not prove that each element of a claim can be established by classwide proof." *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 858 (6th Cir. 2013) (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)). Where predominance is satisfied, if a plaintiff cannot prove at trial a common question that predominates over individual issues, the claim will fail on the merits as to the entire class. *Id.*

Further, "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Young*, 693 F.3d at 544 (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)). Although individual damages calculations will generally not defeat proof of predominance, *Olden v. Lafarge Corp.*, 383 F.3d 495, 508–09 (6th Cir. 2004), Rule 23 still requires a damages model that functions on a class-wide basis, *Rodney v. Northwest Airlines, Inc.*, 146 F. App'x 783, 791 (6th Cir. 2005) (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 303 (5th Cir. 2003)). In this way, the predominance inquiry "prevent[s] the class from degenerating into a series of individual trials." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 294 (N.D. Ohio 2007) (citation omitted).

Applying these standards, the Court finds that common questions predominate over individual issues. At bottom, the claims of the class members will turn on the

same body of constitutional law and the defenses the City raises. These constitutional questions will apply similarly to the City's ordinance and administration of it and drive a common resolution to this dispute regardless of individual issues that may arise in the case of any particular class member. Defendants oppose largely on the basis of Plaintiffs' characterization of the exactments at issue as "assessments" not "fees" already discussed with respect to ascertainability. (ECF No. 23, PageID #388.) Modification of the class definition mitigates any such concern here. Finally, any variability in the damages sought is easily administrable by identifying which class members paid the $100 fee in which years and for how many properties. For these reasons, the Court finds that Plaintiffs carried their burden to show predominance.

### II.C.2. Superiority

Superiority requires courts to analyze whether a class action "is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin*, 458 F.3d at 554). Rule 23 considers "whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior." *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 308 (4th Cir. 2013) (citation omitted). This analysis seeks to determine whether the burdens and costs of a class action justify certification given the alternatives.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Young*, 693 F.3d at 545 (quoting *Amchem Prods.*, 521 U.S. at 617 (citation omitted)). Without a class action, then, "[w]here it

is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Without question, the fees at issue present a textbook example for a class action in this regard.

But the superiority inquiry advances other goals as well. Courts consider, for example, "the difficulties likely to be encountered in the management of a class action." *Beattie*, 511 F.3d at 567. "Where many individual inquiries are necessary, a class action is not a superior form of adjudication." *Young*, 693 F.3d at 545. But this case presents no such issues. Superiority also asks whether class adjudications will "achieve economies of time, effort, and expense." *Amchem Prods.*, 521 U.S. at 615. Because much of the work identifying potential class members is already done and the class appears to be a manageable size, the burdens of managing a class action are not substantial, particularly compared to the amounts involved.

Nor does the availability of fee-shifting under Section 1988—should Plaintiffs prevail—affect superiority in this case. In some cases, the ability of civil-rights plaintiffs to recover fees might overcome the problem of small recoveries or individual litigation preferable to proceeding on a class basis. *See Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2003). Here, however, where an individual class member might recover less than the filing fee, statutory fee shifting does not solve the inherent difficulties associated with small recoveries. Accordingly, the Court finds that a class action is the superior means of adjudication in this case.

### III.  Rule 23(g) Counsel

Because the Court determines that certification of a class under Rule 23(b)(3) is appropriate, it must appoint class counsel.  Fed. R. Civ. P. 23(g)(1).  A court may appoint class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)." Fed. R. Civ. P. 23(g)(2).  Under Rule 23(g)(1)(A), the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A). Also, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Finally, Rule 23(g)(4) requires class counsel to "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).  Although Defendants do not challenge the adequacy of counsel, the Court independently examines counsel for appointment pursuant to Rule 23(g) under this standard.

As to the first factor, briefing on class certification and Plaintiffs' requested preliminary injunction demonstrate that counsel has thoroughly analyzed the potential claims of class members.  The second factor also favors appointment, Plaintiffs' counsel appears well-qualified, experienced, and capable of conducting class action litigation.  The 1851 Center for Constitutional Law has previously litigated class actions involving taxpayers and homeowners.  (*See* ECF No. 13, PageID #148–49 (collecting cases).)  Moreover, the briefing on class certification indicates

27

that Plaintiffs' counsel has more than adequate knowledge of the applicable procedural and substantive law.

As to the third factor, counsel's pleadings and briefing have demonstrated sufficient knowledge of the constitutional jurisprudence involved in the parties' claims and defenses. Finally, counsel has committed significant resources to represent the class, specifically, three attorneys who have, it is apparent to the Court, invested considerable time in this case already. On this record, and because counsel has vigorously represented Plaintiffs, the Court further finds that Plaintiffs' counsel of record have and will fairly and adequately represent the class.

Accordingly, the Court **APPOINTS** Plaintiffs' counsel of record—Maurice Thompson, Michael Rasor, and Morgan Schweighoefer—as class counsel.

## IV. Individual Defendants

Finally, Defendants contend that the class action should not be certified against the two individual defendants because the individual defendants are entitled to qualified immunity. (ECF No. 23, PageID #389 (citing *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016).) However, Rule 23 does not grant the Court "license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. Class determinations "should be predicated on evidence presented by the parties concerning the maintainability of the class action," rather than the substantive merits of the case itself. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 851.

At this point, the Court has no opinion on whether the individual defendants are entitled to qualified immunity because that substantive inquiry has no bearing

on class certification. The Court will consider Defendants' qualified immunity argument and any other merits-based defense at the appropriate time. While the Court understands, and has a certain amount of sympathy for, the concerns about including the individual Defendants in any class certification order that defense counsel raised, there are ways to address those issues other than by fast forwarding to a ruling on the merits now. To that end, the Court will not identify the individual Defendants in notice to potential class members. Doing so will avoid at least some concerns bearing on the circumstances of the individual Defendants without prejudice to class members, who likely will not recognize the names of these individuals in any event.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' motion and **CERTIFIES** the following class:

> All individuals and businesses who own residential rental property in the City of Cleveland Heights and, while residing outside of Cuyahoga County, on or after January 31, 2021, paid to the City of Cleveland Heights one or more $100 annual out-of-county owner registration fees.

After any appeal, the Court will schedule further proceedings.

**SO ORDERED.**

Dated: April 11, 2024

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio