# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| THE CROSSROADS GROUP, LLC, *et al.*, | ) ) ) | Case No. 1:23-cv-184 |
| Plaintiffs, | ) ) | Judge J. Philip Calabrese |
| v. | ) ) ) | Magistrate Judge Jennifer Dowdell Armstrong |
| CITY OF CLEVELAND HEIGHTS, OHIO, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## OPINION AND ORDER

The City of Cleveland Heights requires homeowners who lease their property to register and apply for a certificate of occupancy. If the homeowner resides outside Cuyahoga County, Ohio, the owner must also pay an additional $100 fee. Plaintiffs challenge that additional fee arguing that it (1) constitutes a taking and an unconstitutional condition and (2) violates their rights to due process and equal protection of the laws, all as guaranteed by the Fourteenth Amendment. Previously, the Court certified a class of out-of-county owners of residential rental properties in Cleveland Heights. Both Plaintiffs and Defendants seek summary judgment in their favor. For the reasons that follow, the Court **GRANTS IN PART** Plaintiffs' motion for summary judgment (ECF No. 43) and **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment (ECF No. 46).

## STATEMENT OF FACTS

Section 1347.02 of the Cleveland Heights Housing Code requires any "owner, agent, or person in charge of any dwelling structure" who "rent[s] or lease[s] such structure for residential occupancy" to "hold a certificate of occupancy issued by the Building Commissioner."  (ECF No. 43-2, PageID #889.)  Owners must apply for the certificate of occupancy on an annual basis.  (*Id.*, § 1347.03, PageID #890.)  The application requires a fee of $200 for the first dwelling unit in a building, $50 for the second dwelling unit, and $25 for each additional unit, with the total for one building not to exceed $1,225 annually.  (*Id.*, § 1347.06(a), PageID #892.)  Among other information, the application requires the "name, address[,] telephone number, and email address" of the owner of the property and of the agent or person in charge of the property.  (*Id.*, § 1347.03, PageID #890.)

A compliant structure receives a certificate of occupancy containing, among other information, the name and contact information "of the owner and, if the owner does not reside on the premises, the name, address, telephone number, and e-mail address of the resident agent in charge of the building or structure, and the name, address, telephone number, and email address of the non-resident agent, if any." (*Id.*, § 1347.03(b)(2), PageID #890.)  The Building Commissioner has the authority to revoke a certificate of occupancy based on any false statement in connection with the application or non-compliance with the housing code, among other things.  (*Id.*, § 1347.03(c).)  Additionally, a violation shall result in a $200 fine for each quarter of the year during which the violation continues.  (*Id.* § 1347.03(e), PageID # 891.)

2

Violations of the Housing Code, generally, are minor misdemeanors, punishable by a fine, not to exceed $1,000, up to six months imprisonment, or both.  *See* Cleveland Hts. Codified Ordinances § 1345.99.

A.     **The Out-of-County Fee at Issue**

In addition to procuring a certificate of occupancy like all owners of dwellings for rent in Cleveland Heights, owners who reside outside Cuyahoga County must also comply with the requirements of Section 1351.34, titled "Registration of Dwelling Structure by Out-of-County Owners."  (*Id.*, § 1351.34, PageID #912.)  As currently in effect, Section 1351.34 obligates owners of dwelling structures who reside outside Cuyahoga County to register annually with the Building Commissioner and designate an authorized agent "who maintains a physical office [in Cuyahoga County] or resides within Cuyahoga County."  (*Id.*, § 1351.34(a).)  This agent "must be a natural person" over the age of 18 who resides or maintains a physical office, not a post office box, in Cuyahoga County.  (*Id.*)  Under the ordinance, "the owner consents and agrees to receive any and all notices of violation of City ordinances and to receive process in any court proceeding or administrative enforcement proceeding" relating to the residential structure in Cleveland Heights.  (*Id.*)  The agent's representations in court bind the owner.  (*Id.*)  Annual registration requires the owner to include the name and address of the designated agent.  (*Id.*)

This ordinance carries a $100 annual fee.  (*Id.*, § 1351.34(c), PageID #912.)  A violation of Section 1351.34 is a first-degree misdemeanor punishable by a fine not to exceed $1,000, imprisonment up to six months, or both; each day of a violation constitutes a separate offense.  (*Id.*, § 1351.34(d), PageID #912.)

3

### B.     History of the Fee

In 2007, the Cleveland Heights city council first enacted Section 1351.34, including its $100 registration fee for out-of-county owners.  (ECF No. 43-5, PageID #956.)  In December 2020, the city council amended the ordinance, *repealing* its provision for registration procedures—including the $100 annual fee.  Cleveland Heights Ordinance 124-2020, § 4 (Dec. 7, 2020) ("Current Section 1351.34 of Chapter 1351 of the Codified Ordinance of the City of Cleveland Heights, as it existed prior to the effective date of the ordinance, is hereby repealed.").

After the December 2020 amendments repealed the $100 fee from Section 1351.34, the City continued to collect the fee from out-of-county owners of rental dwellings.  (ECF No. 43-4, PageID #938.)  When asked for its basis for continuing to do so, the City cited Section 1369.16.  (ECF No. 1-3, PageID #34 & #41.)  That ordinance is part of the Cleveland Heights Business Maintenance Code and bears the title, "Registration of Business Structures by Out-of-County Owners."  Section 1369.16 is largely identical to Section 1351.34—with three substantive differences.  First, Section 1369.16 does not contain language stating that the registration must reflect the owner's and agent's express agreement to appear in court and that the agent's testimony will bind the owner.  That language appears only in Section 1351.34.

Second, as its title and placement suggest, Section 1369.16 applies to out-of-county owners of "business structure[s], including . . . commercial, industrial[,] or institutional structure[s]."  (ECF No. 1-2, § 1369.16(a), PageID #31.)  At the time of the December 2020 amendment, however, Section 1369.16 described such business

4

structures as "dwellings." (*Id.*)  In its entirety, the relevant language appeared as follows:

> If a *business* structure, including without limitation a commercial, industrial or institutional structure, located within the City is owned by a person or persons, none of whom reside within Cuyahoga County, the owner(s) of the *dwelling* structure, [within a certain timeframe], shall register with the Commissioner of Buildings . . . and designate an authorized agent for each structure.

(*Id.* (emphasis added).)  In this ordinance, "'[b]usiness' means all uses or occupancies other than residential."  Cleveland Heights Codified Ordinances § 1361.06.

Third, when the city council repealed the $100 registration fee for out-of-county owners of residential dwellings in Section 1351.34, it left untouched the $100 registration fee in Section 1369.16.  Therefore, after the December 2020 amendments, Section 1369.16 continued to authorize collection of the fee from the owners to whom it applied, but Section 1351.34 no longer did.

## C.  Reenactment of the Fee

On June 22, 2023, after the commencement of this litigation, the city council restored the registration provision in Section 1351.34, including the $100 fee.  (ECF No. 43-4, PageID #939–40.)  In doing so, the city council declared that "the December 2020 amendments were never intended to eliminate the long-standing requirement that all out-of-county owners that are involved in the business of leasing dwelling structures . . . must pay the same $100 registration fee that all other out-of-county property owners must pay."  (*Id.*, PageID #938.)  Further, it characterized removal of the fee in the December 2020 amendment as "duplicative of the $100 registration fee set forth in Section 1369.16(c)."  (*Id.*)

5

Also, the June 2023 amendment replaced the word "dwelling" in Section 1369.16(a) with the word "business." (*Id.*, PageID #939.) The city council characterized that change as an effort "to clarify the legislative intent and to ensure that all of the out-of-county registration requirements set forth in Sections 1351.34 and 1369.16 are the same." (*Id.*, PageID #938.) The city council did not make the changes in these ordinances retroactive. (*Id.*, PageID #940.)

## STATEMENT OF THE CASE

Plaintiff Sole Houses, LLC owns rental homes in Cleveland Heights for which the City assessed the $100 annual registration fee for out-of-county ownership. (ECF No. 5, ¶¶ 7 & 9, PageID #56.) Plaintiff The Crossroads Group, LLC is the sole member of Sole Houses. (*Id.*, ¶ 7, PageID #56.) Plaintiff Andrew Strigle is a member of The Crossroads Group. (*Id.*, ¶ 8, PageID #56.)

On January 31, 2023, The Crossroads Group and Mr. Strigle sued the City of Cleveland Heights, Ohio, and City employees Pamela Roessner and Gajane Zaharan. (ECF No. 1.) On February 9, 2023, Plaintiffs amended their complaint as of right to include Sole Houses as a Plaintiff. (ECF No. 5.) Plaintiffs challenge the $100 annual registration fee for out-of-county owners of residential dwellings. Plaintiffs seek a declaratory judgment, injunctive relief, and restitution based on alleged violations of due process and equal protection under the Fourteenth Amendment, unconstitutional conditions and takings under the Fifth and Fourteenth Amendments, and unjust enrichment under State law.

Plaintiffs moved to certify a class of similarly situated owners of houses in Cleveland Heights who do not reside in Cuyahoga County. (ECF No. 13.) The Court granted in part Plaintiffs' motion for class certification. (ECF No. 32.) Mindful of the applicable limitations period, the Court certified the following class:

> All individuals and businesses who own residential rental property in the City of Cleveland Heights and, while residing outside of Cuyahoga County, on or after January 31, 2021, paid to the City of Cleveland Heights one or more $100 annual out-of-county owner registration fees.

(*Id.*, PageID #803.) In certifying the class, the Court noted that Defendants questioned the standing of The Crossroads Group and Mr. Strigle, who do not directly own property in Cleveland Heights and did not directly pay the fee, and whether the individual Defendants might be entitled to qualified immunity. (*Id.*, PageID #779 & #802–03.) However, the Court declined to decide those merits questions at the class certification stage. (*Id.*, 802 (citing *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 851 (6th Cir. 2013)).)

Following certification, notice was issued to class members (ECF No. 40; ECF No. 44.) No member of the class opted out. (ECF No. 44, PageID #1027.)

After the close of discovery, Plaintiffs and Defendants filed cross-motions for summary judgment. (ECF No. 43; ECF No. 46.) In the course of briefing, Plaintiffs abandoned the following issues: (1) the standing of The Crossroads Group and Mr. Strigle; (2) qualified immunity for the two individual Defendants; (3) whether there is a private right of action to recover damages for violations of the Ohio Constitution; and (4) their equitable claim for restitution based on a theory of unjust enrichment under Ohio law. Therefore, the Court has no occasion to consider them

on their merits and **GRANTS** summary judgment in favor of Defendants on those issues. *See Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011); *see also Rugiero v. Nationstar Mortg., LLC*, 580 F. App'x 376, 378 (6th Cir. 2014); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

## ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The Court's function at this stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention.  *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).  "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Celotex Corp.*, 477 U.S. at 322).  Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial."  *Id.* (citing *Anderson*, 477 U.S. at 250).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

"[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).  Therefore, cross-motions for summary judgment do not warrant granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.  *Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 755

(6th Cir. 2015). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

## I.      January 31, 2021 to June 22, 2023

The parties agree that language authorizing collection of the $100 annual registration fee did not appear in Section 1351.34, "Registration of Dwelling Structure by Out-of-County Owners," from January 31, 2021 (the beginning of the class period) to June 22, 2023 (when the city council passed an amendment restoring that provision to Section 1351.34). Because the presence of that authorizing language changes the applicable legal analysis, the Court first examines the undisputed facts before June 22, 2023.

Defendants rely on Section 1369.16 for the authority to collect the fee during this period. Section 1351.34 and Section 1369.16 have parallels, but there are important differences. Chapter 1351 is a part of the Cleveland Heights Housing Code; Chapter 1369 is part of its Business Maintenance Code. (ECF No. 43-2; ECF No. 43-3.) The title of Chapter 1351 is "Basic Standards for Residential Occupancy"; the title of Chapter 1369 is "Basic Standards for Business Occupancy." (ECF No. 43-2, PageID #896; ECF No. 43-3; PageID #927.) Section 1351.34 is the penultimate section of Chapter 1351; Section 1369.16 is the penultimate section of Chapter 1369. (ECF No. 43-2, PageID #912; ECF No. 43-3, PageID #932.) The title of Section 1351.34 is "Registration of Dwelling Structure by Out-of-County Owners"; the title of Section 1369.16 is "Registration of Business Structures by Out-of-County Owners." (ECF No. 1-2.) Section 1351.34 applies "[i]f a dwelling structure located

10

within the City is owned by" out-of-county residents; Section 1369.16 applies "[i]f a business structure, including without limitation a commercial, industrial or institutional structure, located within the City is owned by" out-of-county residents. (*Id.*) Section 1351.34 requires registration from "the owner(s) of the dwelling structure"; Section 1369.16 requires registration from . . . "the owners(s) of the *dwelling* structure." (*Id.*) (emphasis added).

The use of the word "dwelling" in Section 1369.16 is odd. Plaintiffs surmise that "the City copied and pasted its preexisting" language from Section 1351.34 and mistakenly failed to change the word "dwelling" to "business." (ECF No. 46, PageID #1098.) Defendants argue that the use of the word "dwelling" in Section 1369.16 expands the reach of the ordinance from "commercial, industrial or institutional structure[s]" to residential "dwelling structure[s]" or to dwellings that out-of-county owners rent out, making them businesses. (ECF No. 48, PageID #1134.)

## I.A.    Interpretation of the Ordinance

"To interpret a state or municipal ordinance, federal courts look to see whether state courts have spoken on the issue." *O'Neill v. Louisville/Jefferson Cnty. Metro Gov't*, 662 F.3d 723, 728 (6th Cir. 2011) (quoting *Gaughan v. City of Cleveland*, 212 F. App'x 405, 409 (6th Cir. 2007)). Here, the parties identify no authority interpreting Section 1369.16, and the Court has found none. "Where no state court has interpreted the term at issue," federal courts examine the text of the ordinance. *Id.* Words undefined by the ordinance "should be interpreted according to their common meaning and in reference to the context in which they appear." *Id.*

11

Before its amendment in 2023, Section 1369.16(a) provided that, "[i]f a *business* structure" met certain conditions, then "the owner(s) of the *dwelling* structure" had to take certain actions.  Business structures generally are not dwellings.  Nor are commercial or industrial structures.  And it would be unnatural in the same sentence to shift from regulating business structures to residential dwellings, particularly in a chapter of the ordinances dedicated to the former:

> If a *business* structure, including without limitation a commercial, industrial or institutional structure, located within the City is owned by a person or persons, none of whom reside within Cuyahoga County, the owner(s) of the *dwelling* structure, [within a certain timeframe], shall register with the Commissioner of Buildings . . . and designate an authorized agent for each structure.

(*See* ECF No. 1-2, § 1369.16(a), PageID #31.)  Using a definition of the term "business" the excludes residences confirms that Section 1369.16 does not apply to residential dwellings.  *See* Cleveland Heights Codified Ordinances § 1361.06 ("'Business' means all uses or occupancies other than residential.").  Likewise, as used in the Business Maintenance Code where Section 1369.16 is located, the term "business" means "all uses or occupancies *other than residential*."  Cleveland Heights Codified Ordinances § 1361.06 (emphasis added).

Tellingly, the Business Maintenance Code does not define the terms "dwelling" or "dwelling structure."  But the Housing Code, which contains Section 1351.34, does.  It defines a "dwelling structure" as "a building or structure used or designed to be used all or in part, *for residential purposes*."  *Id.* § 1341.10 (emphasis added).  In other words, the definitions of "business structure" and "dwelling structure" are mutually

exclusive, but pre-amendment Section 1369.16(a) regarding business structures at one point uses the term "dwelling structure."  This is a classic scrivener's error.

When amending the ordinance to correct this language in June 2023, the city council attempted to reconcile these terms by characterizing owners of residential rental properties as "those in the business of leasing dwelling structures."  (ECF No. 43-4; PageID #938.)  This face-saving effort fails on three fronts.

First, dwelling structures do not lose their residential character merely because their residents are renters.  *See, e.g., Kinzel v. Ebner*, 2020-Ohio-4165, ¶¶ 69–71, 157 N.E.3d 898 (Ohio Ct. App. 2020); *Catawba Orchard Beach Ass'n, Inc. v. Basinger*, 115 Ohio App. 3d 402, 409, 685 N.E. 2d 584 (1996).

Second, even if a "business" includes "leasing dwelling structures," the plain language of the ordinance does not treat such a use as a business under the ordinance in effect at the time.  Defendants read the language "commercial, industrial or institutional" structures (which are plainly not dwellings within any ordinary meaning of the terms) out of the requirements of the ordinance.  That is, their reading narrows the ordinance such that only an out-of-county landlord in the business of renting a dwelling had to register and designate an agent before the 2023 amendment.  That result makes no sense and is not how the City or anyone else treated the ordinance in practice.

Third, the structure of the ordinances confirms what the plain language and natural reading suggest.  The organization of the Cleveland Heights Codified Ordinances clearly intends Section 1351.34 to govern rental dwelling structures and

13

Section 1369.16 to govern non-residential business structures.  The code divides itself into a "Housing Code" and a "Business Maintenance Code."  Within each, a chapter establishes "Basic Standards" for "Occupancy."  And within each chapter, a largely identical section requires registration from out-of-county owners—one for "dwelling" structures and one for "business" structures.  There is no definition for "dwelling" or "dwelling structure" in the Business Maintenance Code, where Section 1369.16 is located; those definitions are found in the Housing Code, where Section 1351.34 is found.  The Business Maintenance Code would be an odd place to look for the requirements (and fees) for out-of-county owners of residential dwellings, even if operated as a business.  Similarly, there is no definition for the term "business" in the Housing Code; only the Business Maintenance Code provides one.  Reading Sections 1351.34 and 1369.16 as exclusively governing dwelling and business structures, respectively, tracks this structure.

For these reasons, Defendants' resort to the scrivener's error in Section 1369.16 does not save it from invalidity as applied to the class members' residential rental properties.  Section 1369.16 did not authorize the City to collect a $100 annual registration fee from out-of-county owners of residential rental property.  Before the June 2023 amendments, neither did Section 1351.34.  At bottom, Defendants' argument based on Section 1369.16 amounts to an effort to find a legal basis for the City's actions.  Such efforts have recently come into vogue, but the statutory language does not support the City's argument.  Therefore, from the beginning of the class period on January 31, 2021 through the amendment of Section 1351.34 on June 22,

2023, the City lacked a legal basis for the fee, making its collection arbitrary and capricious.

### I.B.    Defenses Under Substantive Due Process

"Even if the City misinterpreted or misapplied the prior version of Section 1369.16(a)," Defendants argue that such a misinterpretation "does not give rise to a substantive due process claim." (ECF No. 48, PageID #1134.)  Substantive due process under the Fourteenth Amendment protects, among other interests, the "right not to be subject to 'arbitrary or capricious' [government] action," either "legislative or administration action." *Johnson v. City of Saginaw, Mich.*, 980 F.3d 497, 513 (6th Cir. 2020) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)).  "Proving a violation of substantive due process requires not only that the challenged state action was arbitrary and capricious, but also that the plaintiff has a constitutionally protected property or liberty interest." *Johnson*, 980 F.3d at 514. Here, the parties do not dispute that class members have a property interest in the money that Cleveland Heights collected.  However, Defendants contend that an error in the City's interpretation or application of its own laws cannot amount to a constitutional violation.   Additionally, Defendants argue that the reference to "dwelling structures" in pre-amendment Section 1369.16 provided a rational basis for their interpretation of that provision.  (ECF No. 48, PageID #1134–35.)

Assuming that substantive due process applies to a municipality's unauthorized collection of funds, Defendants' arguments are unavailing.

### I.B.1. Municipal Ordinances and Substantive Due Process

In support of their contention that misinterpretation of municipal ordinances cannot give rise to substantive due process claims, Defendants cite two cases from the Sixth Circuit. First, in *Johnson*, the plaintiff brought suit under Section 1983 against the city officials who turned off the water supply to a restaurant without notice. 980 F.3d at 502. The district court denied qualified immunity on the plaintiff's substantive due process claim, in part because it concluded that the ordinance authorizing disconnection of utilities did not apply. The defendants appealed, and the Sixth Circuit ultimately affirmed the district court's determination that a constitutional violation occurred. However, the Sixth Circuit rejected the district court's reasoning, identifying no "controlling authority suggesting that the simple misinterpretation and misapplication of a municipal ordinance constitutes a violation of substantive due process" and listing cases where it had "rejected similar arguments." *Id.* at 514 & n.11.

The cases on which the Sixth Circuit drew for this proposition in its qualified immunity analysis show that a violation of municipal or State law does not equate to a constitutional violation. For example, in *Lewellen v. Metropolitan Government of Nashville & Davidson County*, 34 F.3d 345, 351 (6th Cir. 1994), the court rejected the substantive due process claim of a workman who was accidentally injured as a result of construction code violations. And in *Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), a habeas action, the court found no denial of constitutional due process where Ohio courts erroneously interpreted the Ohio speedy trial statute. However, *Johnson* did not hold that unconstitutional conduct cannot, as a matter of law, give

16

rise to a substantive due process claim where a misinterpretation or misapplication of a local law results in a constitutional injury.

Second, *Golf Village North, LLC v. City of Powell, Ohio*, 42 F.4th 593 (6th Cir. 2022), confirms this reading of *Johnson*. There, the Sixth Circuit rejected the claim that a substantive due process violation occurred where an official misinterpreted the city's own zoning ordinance. *Id.* at 602. Again, the court declined to elevate the violation of a municipal ordinance to the status of a constitutional violation.

Here, the alleged constitutional violation at issue is *not* the City's misinterpretation of its own municipal ordinance. Rather, Plaintiffs claim that the City's collection of the out-of-county fee at issue violates class members' constitutional rights, both on its own terms and because the City repealed the fee but collected it nonetheless. That is, the municipal ordinance did not create the right that Plaintiffs seek to vindicate.

### I.B.2. Rational Basis

Finally, Defendants argue in passing that the reference to "dwelling structures" in Section 1369.16 provided a "rational basis for their interpretation" of the ordinance. (ECF No. 48, PageID #1135.) Rational basis review requires government action to be "rationally related to a legitimate government purpose." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 694 (6th Cir. 2014.) In other words, courts uphold governmental action under rational basis review where "its goal is permissible and the means by which it is designed to achieve that goal are rational." *Id.* Defendants do not explain what legitimate governmental purpose or permissible goal could be served by collecting money from private parties without legal authority

17

to do so.  Nor is the Court able to conjure any.  *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 608 (6th Cir. 2016).

To the extent that Defendants intended to argue that the Court should defer to its interpretation of the ordinance because it was rational, any deference the Court might "perhaps to some degree [afford] the interpretation of the [ordinance] given by those charged with enforcing it" does not withstand the weight of textual and structural evidence against Defendants' interpretation.  *See O'Neill v. Louisville/ Jefferson Cnty. Metro Gov't*, 662 F.3d 723, 728–30 (6th Cir. 2011).

*      *      *

For the foregoing reasons, the Court determines that the City had no legal basis for collecting the $100 annual fee from class members from the beginning of the class period until the amendments restored the fee provision to Section 1351.34 on June 22, 2023.

## II.    From June 22, 2023 to the End of the Class Period

On June 22, 2023, the Cleveland Heights city council restored the $100 annual out-of-county registration requirement, which authorized the fee for any residential rental property owned by a person residing outside Cuyahoga County.  (ECF No. 43-4, PageID #939–40.)  The parties dispute the proper framework for analyzing whether the fee constitutes a taking under the Fifth Amendment.  Specifically, the parties dispute whether the Court should apply the "unconstitutional-conditions" test for land-use permits that the Supreme Court adopted in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), *Dolan v. City of Tigard*, 512 U.S. 374 (1994), and *Koontz v. St. Johns River Water Management*, 570 U.S. 595 (2013).

18

"[T]he government may not deny a benefit to a person because he exercises a constitutional right." *Regan v. Taxation With Representation of Wash.*, 461 U. S. 540, 545 (1983). *Nollan* and *Dolan* "involve a special application" of this doctrine that protects the Fifth Amendment right to just compensation for the taking of private property. *Koontz*, 570 U.S. at 604 (quoting *Lingle v. Chevron U. S. A. Inc.*, 544 U.S. 528, 547 (2005)). "A primary objective of the Takings Clause is to prevent the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Lifestyle Cmtys., Ltd. v. City of Worthington, Ohio*, ___ F.4th ___, No. 25-3048, 2026 WL 206210, at *3 (6th Cir. Jan. 27, 2026) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

### II.A.   User Fee

Defendants maintain that unconstitutional conditions doctrine does not apply as a matter of law. In their view, the out-of-county registration fee is not a monetary exaction subject to the unconstitutional conditions doctrine but a "user fee" implemented under its police powers to offset the City's costs of administering the registration program. (ECF No. 43, PageID #864–74.)

A user fee is a "charge assessed for the use of a particular item or facility." Black's Law Dictionary (12th ed. 2024); *see United States v. Sperry Corp.*, 493 U.S. 52, 63 (1989) (explaining that user fees are "reimbursement of the cost of government services"). A user fee is meant to be a "fair approximation" of the cost of the benefits supplied by the government to the user. *Massachusetts v. United States*, 435 U.S. 444, 463 n.19 (1978). Because the user pays for a benefit received, user fees are not a taking under the Fifth Amendment. *Koontz*, 570 U.S. at 615 (quoting *Brown v.*

19

*Legal Found. of Wash.*, 538 U.S. 216, 243 n.2 (2003) (Scalia, J., dissenting)).  However, a government cannot "appropriate all, or most, of the award to itself and label[] the booty as a user fee."  *Sperry*, 493 U.S. at 62 (citing *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162–64) (1980)).  Doing so would constitute a taking.  *Id.*

Nothing in the record supports a determination that the out-of-county registration fee is a user fee.  Plaintiffs are not paying for a benefit received.  Nor is the City charging for one.  Instead, as out-of-county landlords, Plaintiffs pay for the same opportunity as in-county landlords to lease residential property in Cleveland Heights.  (ECF No. 43-2, PageID #890–91.)  Indeed, by virtue of living outside Cuyahoga County, Plaintiffs must pay an additional $100 fee without receiving any additional benefit.  Therefore, the registration fee more closely resembles a "booty" that the City has labeled a user fee (though it does not use that label anywhere except in its papers filed with the Court) or, in other words, a monetary exaction.  *Sperry*, 493 U.S. at 62 (citing *Webb's*, 449 U.S. at 162–64).  Therefore, Defendants' argument that the out-of-county fee is a user fee is not well taken.

## II.B.  Unconstitutional Conditions

Recently, the Supreme Court ruled that its decisions in *Nollan* and *Dolan* address potential abuses in the permitting process.  *Sheetz v. County of El Dorado, Calif.*, 601 U.S. 267, 275 (2024).  The Court reads *Sheetz* as applying "regardless of whether the condition requires the landowner to relinquish property or requires her to pay a 'monetary exactio[n].'"  *Id.* at 276 (quoting *Koontz,* 570 U.S. at 612–15).  Other analytical frameworks are underdeveloped in the courts or undertheorized.  For these reasons, the Court will analyze the fee at issue under *Nollan* and *Dolan*.

This framework requires that monetary exactions satisfy the nexus and rough proportionality requirements of *Nollan* and *Dolan*. *Koontz*, 570 U.S. at 612. That is, they must have (1) "an 'essential nexus' to the government's land use-interest" and (2) "'rough proportionality' to the development's impact on the land-use interest." *Sheetz*, 601 U.S. at 275. The essential nexus requirement "ensures that the government is acting to further its stated purpose, not leveraging its permitting monopoly to exact private property without paying for it." *Id.* Under the rough proportionality requirement, a landowner is not required to pay "more than is necessary to mitigate harms" from allowing the permit to be issued. *Id.* at 276. This test applies equally to all branches of the government. *Sheetz*, 601 U.S. at 279.

### II.B.1.  Threshold Question

There is "an important threshold question to any application of *Nollan*/*Dolan*: whether the exaction would be a compensable taking if imposed outside the permitting context." *Sheetz*, 601 U.S. at 280–81. "At the 'first step,' a court asks whether the condition would qualify as a taking if the government had directly required it." *Knight v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 67 F.4th 816, 825 (6th Cir. 2023) (citation omitted). *Knight* predated and, at least in some respects, anticipated the Supreme Court's subsequent decision in *Sheetz*. In *Sheetz*, however, the Supreme Court did not adopt this threshold requirement. Therefore, it is not clear whether this additional step in the analysis is required. The Court proceeds on the assumption that it is.

The City argues that because it "has the police power to advance the public health, safety, and welfare by directly imposing an out-of-county registration

requirement and related registration fee upon landlords, then the unconstitutional conditions doctrine has not been violated."  (ECF No. 48, PageID #1113.)  But an obligation to spend money can provide the basis for a takings claim.  *Koontz*, 570 U.S. at 612.  If not, then "it would be very easy for land-use permitting officials to evade the limitations of *Nollan* and *Dolan*."  *Id.*  While the government may tax and charge user fees, where it exacts money from a landowner, it must satisfy the *Nollan/Dolan* requirements and not simply act pursuant to its police powers, as Defendants contend.

Here, there is a direct link between the registration fee and specific properties just as there was a direct link between the government's demand for money and a specific parcel of real property in *Koontz*.  This link between the out-of-county registration fee and the issuance of a permit implicates the "central concern" of *Nollan* and *Dolan*.  There is a risk that the City may use its substantial power and discretion in land-use permitting to pursue governmental ends that lack an essential nexus to the governmental interest and rough proportionality to the property's impact.  *Id.* at 614.  Accordingly, assuming this threshold requirement in the Sixth Circuit's decision in *Knight* retains its viability after *Sheetz*, the Court examines whether the out-of-county registration fee satisfies the *Nollan/Dolan* essential nexus and rough proportionality test.

### II.B.2.  Essential Nexus

The City contends that "there is an 'essential nexus' between a 'legitimate state interest and the $100 registration fee" because (1) the City "has a valid and legitimate state interest in having out-of-county landlords designate a local agent to receive

service of process and notices of violation" and (2) the City "may impose a reasonable fee to offset the costs of advancing a city's public safety and welfare interests." (ECF No. 48, PageID #1126.)

On summary judgment, the record does not provide evidence supporting an essential nexus between the City's interest and the $100 fee imposed on out-of-county landlords. To obtain a certificate of occupancy, Section 1347.03 of the Housing Code requires those who own residential rental property in Cleveland Heights to provide the "name, address telephone number, and email address of the agent or person in charge of the property" and of "the resident in charge of the building or structure, and the name, address[,] telephone number, and email address of the nonresident agent, if any, if the owner does not reside on the premises." (ECF No. 43-2, PageID #890.) This requirement applies without regard to whether the person who owns a residential rental structure resides inside or outside Cuyahoga County.

But out-of-county landlords are required to provide substantially the same information a second time. (*Id.*, PageID #912.) Under Section 1351.34, out-of-county landlords must designate an "authorized agent" who "maintains a physical office with a street address in Cuyahoga County, Ohio, or who resides in Cuyahoga County" and "include the name and address of the designated agent." (*Id.*) This ordinance requires that the out-of-county landlord only provide a name and address for the authorized agent. (*Id.*) In contrast, to obtain a certificate of occupancy, the City already receives a name, address, telephone number, and email address for the resident in charge or nonresident agent. (ECF No. 43-2, PageID #890.) In some cases,

23

then, the City already has the information. When it does not, this additional requirement for out-of-county owners requires less information, limiting the ways that the City can contact the designated authorized agent. Put another way, the information obtained through the additional registration requirement makes little material difference because it does not fundamentally change the City's ability to obtain the information from the initial certificate of occupancy with little to no additional burden.

The City maintains that the out-of-county registration fee offsets the cost of "advancing the City's public and safety welfare interests." (ECF No. 48, PageID #1126 (citing *Dolan*, 512 U.S. at 386–87).) However, the record provides no support for this argument. Indeed, the record shows that the City does not track the costs associated with properties that are owned by out-of-county landlords. (ECF No. 24-1, PageID #460; ECF No. 24-2, PageID #467 & #469; ECF No. 45-1, PageID #1034–36.)

To the extent the City relies on the housing impact study in the record to support the need for an out-of-county registration requirement (ECF No. 43-8), that report did not study Cleveland Heights specifically or even mention the City. Instead, it reviews rental properties throughout Cuyahoga County. Therefore, the study provides no evidence justifying the fee at issue in this case. What the record does show is that the City did not have a problem contacting property owners residing outside of Cuyahoga County to provide them with a certificate of registration or contact them to pay the required fee using the information on file. (ECF No. 23-1; ECF No. 24-1.)

Following oral argument, Defendants offered a new justification for the out-of-county fee and registration requirement in Section 1354.34.  In a supplemental brief Defendants filed on their own initiative, the City argues that designating a local agent "advances the goal of ensuring that the Cuyahoga County Sheriff can effectuate personal service upon the defendant via a natural person who is located within the Cuyahoga County Sheriff's territorial jurisdiction." (ECF No. 55, PageID #1175.)  But Ohio law provides multiple methods of service, such as certified mail, which do not require personal service. *See* Ohio R. Civ. P. 4.1.  Cleveland Heights already employs these methods. *See* Cleveland Hts. Codified Ordinances § 1345.03(a) & (b).  In any event, the record contains no evidence that the City ever considered this justification until it filed its brief after oral argument.  No meeting minutes, deposition transcript, or response to written discovery includes this justification for the fee at issue.  Nor did the City advance it in its summary judgment papers.

### II.B.3.  Rough Proportionality

Defendants argue that the $100 out-of-county registration fee satisfies the requirement for rough proportionality because "it was set by City Council based upon a reasonable 'estimate' of the approximate cost of processing out-of-county registration applications and enforcing the out-of-county registration requirement." (ECF No. 48, PageID #1126.)  Courts do not rigorously require equivalence between the exaction and the costs or externalities it seeks to offset. *Sperry*, 493 U.S. at 60.  Still, the record in this case contains *no* evidence about the administrative or enforcement costs that the fee purportedly seeks to mitigate.  Indeed, the City does not track such data. (ECF No. 24-1, PageID #460; ECF No. 24-2, PageID #467 &

25

#469; ECF No. 45-1, PageID #1034–36.)  Nor does the record contain evidence that out-of-county owners of residential rental structures create negative externalities or burdens for the City.  Again, the City does not track whether a property owner which fails to maintain the condition of its rental property resides inside or outside Cuyahoga County.  (ECF No. 45-1, PageID #1034.)  Accordingly, the City does not know whether out-of-county landlords increase costs for the City that must be offset by an additional registration fee.  Put another way, the record contains no evidence that would allow the Court to undertake rough proportionality analysis under any standard.

## CONCLUSION

For these reasons, the $100 out-of-county registration fee does not satisfy the essential nexus and rough proportionality requirements of *Nollan* and *Dolan*. Accordingly, this monetary exaction since its reenactment on June 22, 2023 constitutes a taking without just compensation under the Fifth Amendment, made applicable to the City by the Fourteenth Amendment.  *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021).   With that determination, the Court has no need to address Plaintiffs' remaining constitutional claims.   Therefore, the Court **GRANTS IN PART** Plaintiffs' motion for summary judgment (ECF No. 43) and **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment (ECF No. 46).

**SO ORDERED.**

Dated:  January 29, 2026

_____
         J. Philip Calabrese
         United States District Judge
         Northern District of Ohio